STATE OF HAWAII, Plaintiff-Appellee, *v*. MARCELINO REALINA, Defendant-Appellant

NO. 7442

SEPTEMBER 4, 1980

HAYASHI, C.J., PADGETT AND BURNS, JJ.

OPINION OF THE COURT BY BURNS, J.

Defendant Marcelino Realina appeals from a district court judgment convicting him of the offense of terroristic threaten-

ing in violation of HRS § 707-715(a).[1]

At the time of the alleged offense, complainant Steve Hardisty was 24 years old, approximately 5 feet 6 inches to 5 feet 9 inches and 200 pounds. Defendant Realina was 44 years old. The record fails to indicate his height and weight. Realina sometimes testified through an Ilocano dialect interpreter and sometimes directly in English.

The relationship between Hardisty and Realina preceded the evening of the alleged offense.

Hardisty testified that during a period when he was still living with his wife, he found Realina at his home and told Realina "if I ever catch you again, you better watch out. . . . You better stay out of my way."

Realina testified that in July or August 1977 Hardisty telephoned Realina and twice said, "You fucker. You fool around with my wife. I'm going to kill you." Realina reported these threats to the police and was told that he did not have to worry because they would talk to Hardisty.

Thereafter, but prior to the alleged offense, Hardisty separated from his wife in contemplation of eventual divorce.

On December 8, 1977, just prior to 7 p.m., while driving in Hilo, Hardisty saw Realina also driving. Hardisty concluded that Realina was going to visit Hardisty's wife and got upset. Hardisty followed Realina, who, seeing Hardisty following him, drove to the Hilo police station.[2]

When they reached the police station parking lot, they stopped their cars. Hardisty got out of his car and approached Realina, telling Realina, "You come out you fucking Filipino. I'll kill you." The situation continued with Realina silent in his car and Hardisty outside repeating his threats. After a while Realina started his car's engine, preparing to drive away. To prevent Realina from leaving, Hardisty reached in

---

[1] This section was substantially amended by Act 184, Session Laws 1979. For purposes of this appeal, we refer only to the offense as it was defined at the time of arrest and trial.

[2] [DEFENSE COUNSEL:]  Q. . . . If you have any idea, could you tell us why Mr. Realina drove to the police station?
[HARDISTY:]  A. I guess maybe he was afraid or something.

the car and grabbed Realina by the shirt. Realina turned off his car's engine and Hardisty let go of his shirt. Realina looked in his car for a weapon, found a cane knife, and came out of the car with it in his hand. Hardisty turned and ran to the police station, approximately 100 yards away. Realina ran after him, about 30 yards behind. Hardisty entered the police station and in a very excited state reported that he was being chased by a man who was trying to kill him. A police officer listened to Hardisty's story and then went to the doorway and saw Realina running toward the police station, still at least 30 feet away, with the cane knife held in an upward position. As Realina approached, the officer placed his hand on his gun and ordered Realina to drop the cane knife. Realina immediately complied.

The Police Lieutenant in the station then instructed the officer to arrest Realina for terroristic threatening, which he did.

Although he had no prior record, Realina was sentenced to 30 days confinement.

Our standard of review is prescribed in *State v. Hernandez*, 61 Haw. 475, 605 P.2d 75 (1980).

> On appeal, the test to ascertain the legal sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the State, there is substantial evidence to support the conclusion of the trier of fact. [Citations omitted.]

To determine whether there is substantial evidence to support the conviction, we must first determine the elements of the crime of which Realina was convicted and the available defenses. To do that, we have to wind our way through the penal code's statutory maze.

> § 707-715[3] *Terroristic threatening.* (1) A person commits the offense of terroristic threatening if he threatens, by word or conduct, to cause bodily injury to another person. . . :
>> (a) With the intent to terrorize, or in reckless disregard of the risk of terrorizing, another person; . . .

---

[3] *See* n.1, *supra*.

§ 703-300 *Definitions relating to justification.* In this chapter, unless a different meaning is plainly required:

(1) "Believes" means reasonably believes.

(2) "Force" means any bodily impact, restraint, or confinement, or the threat thereof.

(3) "Unlawful force" means force which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or would constitute an offense except for a defense not amounting to a justification to use the force. . . .

(4) "Deadly force" means force which the actor uses with the intent of causing or which he knows to create a substantial risk of causing death or serious bodily harm. . . . A threat to cause death or serious bodily injury, by the production of a weapon or otherwise, so long as the actor's intent is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force.

. . . . .

§ 703-301 *Justification a defense; civil remedies unaffected.* (1) In any prosecution for an offense, justification, as defined in sections 703-302 through 703-309, is a defense.

. . . . .

### COMMENTARY ON § 703-301

. . . Subsection (1) merely establishes that justification is a defense. This places the burden of producing some credible evidence of the existence of justification on the defendant. If he produces such evidence, or if it appears as part of the prosecution's case, the defendant is entitled to have the defense considered by the jury. The prosecution, however, must prove beyond a reasonable doubt, facts which negative the defense.

. . . . .

§ 703-304 *Use of force in self-protection.* (1)
. . . [T]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

(2) The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping. . . .

. . . . .

§ 701-115 *Defenses.* (1) A defense is a fact or set of facts which negatives penal liability.

(2) No defense may be considered by the trier of fact unless evidence of the specified fact or facts has been presented. If such evidence has been presented, then:

(a) If the defense is not an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt. . . .

. . . . .

Since, by definition, "force", as enumerated in HRS § 703-300, includes "the threat" of force and since the essence of terroristic threatening is a threat, it follows that the authorization to use force or deadly force contained in HRS §§ 703-304(1) and (2) may be available in a justification defense to a charge of terroristic threatening. Whether deadly force may be used depends upon whether the defendant reasonably believed such force was necessary to protect him from certain dangers enumerated in HRS § 703-304(2). Whether non-deadly force may be used depends upon whether the defendant reasonably believed it necessary to prevent unlawful force from being used against him. Those conclusions lead to the following inquiry.

What kind of force did Realina use? With respect to deadly force, certainly Realina's cane knife could have been used to cause serious bodily harm. Whether his use of it in

this case created a substantial risk of causing serious bodily harm is not so certain. Further, if Realina's intent in wielding the knife was limited to creating an *apprehension* that he would use deadly force if necessary,[4] his conduct would not have constituted "deadly force" within the meaning of HRS § 703-300(4).

According to HRS § 703-304(2), the use of deadly force was justifiable if Realina believed it necessary to protect himself against kidnapping. According to HRS § 707-720, ". . . A person commits the offense of kidnapping if he intentionally restrains another person with intent to: . . . (d) Inflict bodily injury upon him. . . ; or (e) Terrorize him . . ." In the present case, the testimony seems to establish a *prima facie* showing that Hardisty violated HRS § 707-720 before Realina reached for the knife. Therefore, the record contains sufficient evidence to initially justify Realina's resort to deadly force. It, of course, follows that if Realina used only non-deadly force, justification was available as a defense, since the force previously used by Hardisty was clearly unlawful, and Realina could reasonably have believed force was immediately necessary to protect himself.

Thus, whether the force he used was deadly or non-deadly, Realina clearly met the burden imposed on him by HRS § 701-115 to come forward with evidence of justification. Justification is not an affirmative defense under the penal code. *State v. McNulty*, 60 Haw. 259, 262, 588 P.2d 438 (1978), *cert. denied* 441 U.S. 961. The burden was on the

---

[4] [REALINA:] A. . . . So, in order to defend myself, I look at the knife — just to defend myself in case.
[DEFENSE COUNSEL:] Q. So you —
[REALINA:] A. I came out of my car and then he run away and just as (inaudible) I know that he going reach by the police station.
[DEFENSE COUNSEL:] Q. So, you followed him because you knew he was going to reach the police station.
[REALINA:] A. Yeah.
[DEFENSE COUNSEL:] Q. Did you ever threaten him?
[REALINA:] A. No.
[DEFENSE COUNSEL:] Q. Did you intend to hurt him with the knife?
[REALINA:] A. No. In fact, as I said, I was only trying to defend myself just in case.

prosecution to prove facts negativing the justification defense beyond a reasonable doubt. *See* HRS § 701-115(2)(a) and Commentary to HRS § 703-301, *supra*. On review, the question is whether there is substantial evidence negativing the defense. *Cf. State v. Hernandez, supra.*

The State contends that Realina's justification defense "evaporated in the long chase of the victim". In other words, the State concedes that Realina's actions were lawful until some point between his car and the police station, at which point the State contends his actions became unlawful. In view of the special and unusual facts of this case, and especially in view of the facts that it was Realina who drove to the police station and that the chase was into the police station from the police station parking lot, we do not think the length of the chase is substantial evidence negativing Realina's justification defense.

We hold that the record lacks substantial evidence to support the trier of facts' conclusion of guilt.

Reversed.

*Lloyd Van De Car*, Deputy Public Defender, County of Hawaii, on the briefs, for defendant-appellant.

*Kenneth K. Fukunaga*, Deputy Prosecuting Attorney, County of Hawaii, on the brief, for plaintiff-appellee.