*** FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER ***

**Electronically Filed
Supreme Court
SCWC-16-0000571
28-JUN-2019
08:43 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

STATE OF HAWAI'I, Respondent/Plaintiff-Appellee,

vs.

DEAN VICTOR MATUU, Petitioner/Defendant-Appellant.
_____

SCWC-16-0000571

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000571; CR. NO. 15-1-0128)

JUNE 28, 2019

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

On April 29, 2016, a jury convicted Petitioner/Defendant-Appellant Dean Victor Matuu ("Matuu"), who had been indicted on charges of Murder in the Second Degree in violation of Hawai'i Revised Statutes ("HRS") §§ 701.5 and 706-656 (2014), of the

lesser included offense of Assault in the First Degree, HRS §
707-710 (2014), for stabbing his cousin Frank Kapesi ("Frank")
on January 25, 2015 at a home Matuu and Frank shared with other
family members.

This appeal arises from Matuu's challenge that his
conviction was not supported by substantial evidence and that
the circuit court's jury instructions were prejudicially
erroneous or misleading.  The ICA affirmed the Circuit Court of
the First Circuit's ("circuit court['s]") Judgment of Conviction
and Sentence,[1] concluding in relevant part that there was
substantial evidence to support the jury's verdict and that the
jury instructions, when viewed as a whole, were not
prejudicially insufficient, erroneous, inconsistent, or
misleading.  See State v. Matuu, No. CAAP-16-571 (App. Sep. 29,
2017) (SDO).

For the following reasons, the ICA correctly concluded that
Matuu's conviction on the lesser included offense of Assault in
the First Degree was supported by substantial evidence and that
the circuit court's jury instructions, as a whole, were not
prejudicially erroneous or misleading.  However, the basis upon
which the ICA had concluded "the [circuit] court sufficiently
instructed the jury regarding unanimity" and that therefore
"[t]he additional unanimity instruction requested by Matuu was

---

[1]     The Honorable Glenn J. Kim presided.

2

unnecessary," Matuu, SDO at 10-11, is erroneous. The general unanimity instruction as to the elements, cited to by the ICA, did not include the requirement that the prosecution negative justification defenses as an element of the offense. Nevertheless, the circuit court's justification instructions and the general "unanimous verdict" instruction did require for a conviction jury unanimity that the prosecution meet its burden of proving beyond a reasonable doubt that it negatived Matuu's justification defenses. The justification instruction made clear that the prosecution had the burden of disproving the self-defense and defense-of-other defenses beyond a reasonable doubt, and the general unanimous verdict instruction made clear that the verdict had to be unanimous, which would include the prosecution's burden to negative the defenses beyond a reasonable doubt.

Accordingly, although the ICA erred in concluding that the elements instruction addressed the unanimity required to disprove the justification defenses, the instructions as a whole were not insufficient, erroneous, inconsistent, or misleading. We therefore affirm the ICA's Judgment on Appeal that affirms the circuit court's Judgment of Conviction and Sentence. The requirement of unanimity beyond a reasonable doubt as to the negativing defenses element would have been much clearer to the jury if the justification defense instructions had specifically

3

included the unanimity requirement. We therefore provide guidance that circuit courts should do so in the future.

## II. Background

### A. Factual Background

From 2013 when Matuu was seventeen years old, he shared a home with his cousins, Frank[2] and Kapesi Kapesi, and two uncles. Matuu and Frank shared a living space, which was separated by a chest of drawers, television set, other furniture, and a tarp.

Frank was often "high" on drugs. Additionally, he had been belligerent with other family members in the past. Testimony regarding three instances between 2013 and 2014 of Frank's belligerent behavior were provided at trial.

First, during a family party in 2013 while Kapesi was dancing to music, Frank punched Kapesi in the face for "no reason," requiring family members to take Kapesi to a hospital for stitches. The incident caused Matuu, who was still in high school at the time, to fear Frank as he "kn[e]w for sure that [Frank] [could] do that to anybody and to me, too."

Second, in November 2014, Frank directly accosted Matuu after Matuu returned from playing basketball, telling Matuu, "I going beat you up." Nothing came of the incident as Matuu, who

---

[2] Although Frank was referred to as "Uncle Frank" by Kapesi, testimony showed that Frank was Matuu's cousin.

did not know why Frank was mad, told Frank he did not want to fight and then returned to the park.

Third, in December 2014, after hearing a sudden "crashing in front of the garage" as if "something broke," Matuu came out of his room and saw one of his uncles get up from the sidewalk as Frank walked away.  The incident scared Matuu.

In the afternoon of January 23, 2015, when Matuu returned home around three or four o'clock, it was apparent to Matuu that Frank was high on drugs.  Later, without interacting with Frank, Matuu helped an uncle's girlfriend prepare a meal in a slow cooker.  Matuu then returned to his room.

Around six in the evening after drinking one or two shots of Ciroc[3] with Kapesi, Matuu went to a friend's house down the road and smoked some marijuana.  Matuu returned home around four or five in the morning on January 24, 2015.

Upon returning home, Matuu went to the kitchen to scoop food out of the slow cooker.  According to Matuu, as he was doing so, Frank accosted him:

> [T]hat's when all of a sudden Mr. Frank Kapesi . . . approached me over here, and I seen him with my side -- my side vision, and he came to me, and he was like, "Oh, you fucka.  Why you gotta come and eat all the food?  Why you gotta eat the food for?"  I was looking at him. "Bro, I'm not eating all the food.  There's still food in there.  I made this food.  I helped somebody make this food."  But, no, he got angry at me.  I don't even know what I did to him, but he got mad.  After I was making the food, he was still approaching me.  "Fucka, I telling you why you gotta eat all the food?"

---

3    Ciroc is a brand of vodka.

Matuu then retreated to his room, but Frank followed him and kept yelling at him.  According to Matuu,

> he was telling me, "Oh, you don't hear me, you fucka?"  I was telling him, "Bro, I'm not even -- I'm not even trying to argue with you."  I'm just trying to make my food.  I was feeling good, buzzing, and I wanted to have a good time because I just came from a friend's house.  And after that, he was still yelling at me.  "Oh, you fucka.  Fuck you.  I going beat you up and I'll put you in the hospital."  And after that, I was like, "Bro."  Then I came around.  Came around, put my plate on the stool, came around and I stand right here.  And I was telling him -- I was trying to tell him nicely, trying to calm him down, trying to kiss ass because I know he can hurt me, or he can beat me up.  I was telling him, "Bro, why you gotta – why you gotta yell at me?  Why you gotta -- why you gotta say this kind of stuff to me?"  But, no, he didn't -- he wasn't even calm down.  He was already mad at me.

Matuu was "scared" during the verbal confrontation.  Matuu surmised that Frank must have seen that Matuu was fearful and began punching Matuu.  At first, Matuu blocked Frank's punches; ultimately Matuu grabbed and wrestled with Frank.  While they wrestled, Matuu thought that Frank "was gonna beat me up because he was telling me he was going to put me in the hospital."  Matuu also "was hoping that [Frank] wouldn't get mad," but Frank nevertheless "was getting mad" while they wrestled.

Kapesi, who had heard Matuu and Frank argue about the food, came out of his room when he heard something break.  When Kapesi found them wrestling on top of each other near Frank's bed, he "jumped in . . . to break them apart."  According to Kapesi, Frank grabbed Kapesi, slammed him to the ground where he lost his breath, and was on top of, but did not punch, Kapesi.

6

In the meantime, Matuu was "scared" when Frank had slammed Kapesi to the ground.  According to Matuu, Frank was punching Kapesi.  Matuu thought that Frank would come after him when Frank was "done with" Kapesi, and therefore Matuu needed to "protect[] himself."  Thus, when Matuu had "br[oken] free" while Frank was on top of Kapesi, he went to the kitchen and grabbed a steak knife.

According to Matuu, when he came back from the kitchen, Frank was still on Kapesi, so Matuu stabbed Frank once "on the side" to "stop him" because he knew Frank was strong and violent.  After stabbing Frank, Matuu said to Frank: "I told you, bro.  I told you to stop, but you was pushing me, and you was bothering me, and you was telling me you was going beat me up and put me in the hospital."

However, according to Kapesi, after he got his wind back, he stood between Matuu and Frank and yelled, "Stop already. Enough."  Kapesi saw Matuu return "fast" from the kitchen area. Kapesi then put his hand up to stop Matuu from swinging at Frank and received a cut on his hand.  Kapesi was in shock, tended to his cut for about thirty seconds, and the "next thing [he] knew, Frank was on the ground" gasping for air.

An autopsy of Frank's body showed multiple blunt force injuries, four stab wounds of the torso, and two incised wounds, i.e., wounds that are longer on the surface of the skin than

7

they are deep. A knife blade was found within a wound track that perforated the left lung and the pulmonary artery. Another knife blade was found at the scene near Frank's body, although Matuu testified that he recalled grabbing only one knife. A toxicology report showed that methamphetamine and amphetamine were present in Frank's blood.

## B.  Procedural Background

Opening statements were made on April 26, 2016, and trial continued on April 28 and 29, 2016. After closing arguments, the jury was instructed in relevant part to "consider all of the instructions as a whole and consider each instruction in light of all of the others"; to "presume the defendant is innocent of the charge against him" as "the prosecution has the duty of proving every material element of the offense charged against the defendant beyond a reasonable doubt"; and that "[i]n order for the prosecution to prove an element, all twelve jurors must unanimously agree that the same act has been proved beyond a reasonable doubt."

The jury was then instructed on the "material elements" of Murder in the Second Degree and all of its included offenses, "each of which the prosecution must prove beyond a reasonable doubt." The circuit court further instructed that "[s]elf-

defense is a defense to the charge of Murder in the Second Degree and all of its included offenses."[4]  Specifically:

> Self-defense involves consideration of two issues.  First, you must determine whether the defendant did or did not use "deadly force."  Second, you must determine whether the force used was justified.  The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified.  If the prosecution does not meet its burden, then you must find the defendant not guilty.
>
> . . . .
>
> If you determine that the defendant used "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Used."  If you determine that the defendant did not use "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Not Used."  You must then follow the law in the applicable section to determine the second issue, which is whether the force used by the defendant was justified.

(Emphasis added.)  The circuit court similarly instructed that "[d]efense[-]of[-]others is a defense to the charge of Murder in the Second Degree and all of its included offenses," and gave similar instructions regarding the "issues" the jury was to consider.[5]  The circuit court also instructed that "[a] verdict must represent the considered judgment of each juror, and in

---

[4]    Matuu had requested a self-defense instruction.  "[A] defendant is entitled to a requested jury instruction on a defense when he presents some evidence going to the defense."  State v. Taylor, 130 Hawaiʻi 196, 207, 307 P.3d 1142, 1153 (2013) (citing State v. Stenger, 122 Hawaiʻi 271, 226 P.3d 441 (2010)).

[5]    Matuu did not propose a defense-of-others instruction.  The circuit court, however, correctly gave an instruction on this justification defense. See Taylor, 130 Hawaiʻi at 207, 307 P.3d at 1153 (holding that if a defendant does not request a defense instruction, a circuit court's failure to instruct on such a defense where there is evidence of the defense upon which a reasonable juror could harbor a reasonable doubt as to the defendant's guilt, will be reviewed for plain error).

order to reach a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous."

Matuu's proposed self-defense instruction, which was rejected by the circuit court, differed in relevant part from the circuit court's given instruction, as it had proposed to clearly instruct the jury that its determination as to whether the defendant used "deadly force" be unanimous by adding the following underlined language:

> If you <u>unanimously</u> determine beyond a reasonable doubt that the defendant used "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Used." If you determine that the defendant did not use "deadly force," <u>or are unable to reach unanimous agreement on this issue</u>, then you are to proceed to the section in this instruction entitled "Deadly Force Not Used." You must then follow the law in the applicable section to determine the second issue, which is whether the force used by the defendant was justified.

On April 29, 2016, a jury convicted Matuu of the lesser included offense of Assault in the First Degree, a violation of HRS § 707-710.[6] He was sentenced to five years of incarceration as a young adult defendant and ordered to pay restitution and fees.

## C.  Appeal to the ICA

Matuu timely filed a Notice of Appeal to the ICA, and presented two points of error:

---

[6]     "**Assault in the first degree**.  (1)  A person commits the offense of assault in the first degree if the person intentionally or knowingly causes serious bodily injury to another person. . . ."  HRS § 707-710 (2014).

>      A.    There was no substantial evidence to support Matuu's
> conviction where the State did not prove beyond a
> reasonable doubt facts negating his justification defenses.
>
>      B.    Matuu's conviction must be vacated where the Circuit
> Court's instruction on the use of deadly force in self-
> protection was prejudicially erroneous and misleading.

On the first issue, Matuu argued that the evidence at trial established that Matuu subjectively believed that his use of force was necessary in self-defense and that such belief was objectively reasonable.  Matuu pointed to the fact that Frank abused drugs often and did so on the night in question, exhibited volatile behavior, and in three prior instances, Frank behaved belligerently or violently toward either Matuu or another family member.  Additionally, because Matuu had seen Frank punch Kapesi in the past, "Matuu reasonably believed that Kapesi would have been justified in using deadly force to protect himself from Frank's attack" when Frank had slammed Kapesi to the ground, thereby supporting Matuu's defense-of-others justification.

On the second issue, Matuu asserted that the circuit court's self-defense instruction, which omitted Matuu's proposed language regarding unanimity and the prosecution's "beyond a reasonable doubt" burden of proof, was erroneous because "the jury may not have unanimously determined beyond a reasonable doubt that Matuu had used 'deadly force' . . . .  The erroneous instructions were not harmless as the jury could have then

rejected self-defense because it found that Matuu could have used 'force' in self-defense, but not 'deadly force.'"

The ICA rejected the challenges.  As to the first issue, the ICA identified substantial evidence in the record showing that even if Matuu subjectively believed that his use of force was necessary in self-defense, that belief was not reasonable because evidence showed that Frank was stabbed multiple times with two knives, and such force was not necessary for self-defense when Frank was unarmed.  See Matuu, SDO at 6.

As to the second issue, the ICA noted that the instruction for assault in the first degree necessitated a finding that Matuu had used "deadly force."  Additionally, as jury instructions are to be considered as a whole, see Matuu, SDO at 10 (citing Samson v. Nahulu, 136 Hawai'i 415, 425, 363 P.3d 263, 273 (2015)), the ICA concluded the jury instructions included appropriate unanimity instructions.  For example, the ICA observed that the jury was explicitly instructed that "in order to convict, the jury must unanimously agree to each element of the crime beyond a reasonable doubt," and that "'[t]he burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified.  If the prosecution does not meet its burden, then you must find the

12

defendant not guilty.'" Matuu, SDO at 11.[7] According to the ICA, the jury was also given a general unanimity instruction. See Matuu, SDO at 10. Accordingly, the ICA concluded that Matuu's instruction using additional unanimity language was not necessary. See id.

Now on appeal to this court, Matuu reasserts the same questions he had posed to the ICA:

> 1. Whether the ICA gravely erred in holding that there was substantial evidence to support Matuu's conviction where the State failed to prove beyond a reasonable doubt facts negating his justification defenses?
>
> 2. Whether the ICA gravely erred in holding that the Circuit Court's jury instruction on the use of deadly force in self-protection [and defense-of-others] was prejudicially erroneous and misleading?

For the following reasons, although the ICA erred in concluding that the elements instruction addressed the unanimity required to disprove the justification defenses, the instructions as a whole were not insufficient, erroneous, inconsistent, or misleading. We therefore affirm the ICA's Judgment on Appeal that affirms the circuit court's Judgment of Conviction and Sentence, and provide the following guidance regarding the inclusion of the unanimity requirement for the negativing defenses element.

---

[7] The full text is available on page 21, infra.

13

### III.  Standards of Review

#### A.  Jury Instructions

> The standard of review for a trial court's issuance or refusal of a jury instruction is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading. Erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial.  In other words, error is not to be viewed in isolation and considered purely in the abstract.

State v. Kassebeer, 118 Hawai'i 493, 504, 193 P.3d 409, 420 (2008) (internal quotation marks, citations, and brackets omitted) (quoting State v. Mainaaupo, 117 Hawai'i 235, 247, 178 P.3d 1, 13 (2008)).

#### B.  Sufficiency of the Evidence

The appellate court reviews the sufficiency of evidence on appeal as follows:

> [E]vidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction; the same standard applies whether the case was before a judge or jury.  The test on appeal is not whether guilt is established beyond a reasonable doubt, but whether there was substantial evidence to support the conclusion of the trier of fact.

State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998) (quoting State v. Quitog, 85 Hawai'i 128, 145, 938 P.2d 559, 576 (1997)).  "'Substantial evidence' as to every material element of the offense charged is credible evidence which is of sufficient quality and probative value to enable a person of

reasonable caution to support a conclusion." <u>Id.</u> (internal quotation marks and citation omitted).

### IV. Discussion

We proceed by examining Matuu's second question regarding jury instructions before proceeding to discuss the first question regarding substantial evidence.

**A. The ICA Correctly Concluded That the Jury Instructions, When Viewed as a Whole, Were Not Prejudicially Erroneous or Misleading, Although It Erred by Concluding the Instruction Requiring Unanimity in Finding the Elements Included the Justification Defenses**

    **1. Matuu's specific concern that the jury may not have unanimously agreed that he used "deadly force" lacks basis.**

At trial, in relevant part, the parties agreed to the following instruction regarding Assault in the First Degree proposed by the court:

> If and only if you find the defendant, Dean Victor Matuu, not guilty of Manslaughter, or you are unable to reach a unanimous verdict as to this offense, then you must consider whether the defendant is guilty or not guilty of the included offense of Assault in the First Degree.
>
> A person commits the offense of Assault in the First Degree if he intentionally or knowingly causes serious bodily injury to another person.
>
> There are two material elements of the offense of Assault in the First Degree, each of which the prosecution must prove beyond a reasonable doubt.
>
> These two elements are:
>
> 1. That on or about January 24, 2015, in the City and County of Honolulu, State of Hawaii, the Defendant **caused serious bodily injury** to Frank Kapesi; and
>
> 2. That the Defendant did so intentionally or knowingly.

15

> "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

(Emphasis added.)

With respect to the justification of self-protection, the circuit court's proposed instruction began:

> Self-defense is a defense to the charge of Murder in the Second Degree and all of its included offenses . . . . Self-defense involves consideration of two issues.  First, you must determine whether the defendant did or did not use "deadly force."  Second, you must determine whether the force used was justified.  If the prosecution does not meet its burden, then you must find the defendant not guilty.
>
> The first issue is: Did the defendant use "deadly force?"
>
> "Deadly Force" means force which the defendant uses with the intent of causing, or which he knows to create a substantial risk of causing[] death or serious bodily injury.
>
> "Force" means any bodily impact, restraint, or confinement, or the threat thereof.
>
> "Serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

Matuu then proposed to add the following underlined language to the relevant remaining portion of the court's proposed instruction:

> If you <u>unanimously</u> determine <u>beyond a reasonable doubt</u> that the defendant used "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Used."  If you determine that the defendant did not use "deadly force," <u>or are unable to reach unanimous agreement on this issue</u>, then you are to proceed to the section in this instruction entitled "Deadly Force Not Used."

The circuit court refused Defendant's proposed instruction.

Matuu contends that without the underlined language, e.g., "unanimous[ly]" or "beyond a reasonable doubt," when the jury proceeded through its instructions regarding self-protection, it may not have unanimously determined beyond a reasonable doubt that the defendant had used deadly force.  Matuu asserts that as a consequence, the jury may have therefore inappropriately limited the scope of justifiable acts only to those necessary to protect against death or seriously bodily injury;[8] had the jury instead been unable to unanimously agree beyond a reasonable doubt that deadly force had been used, then the range of justifiable acts would include those necessary to protect against any "unlawful force."[9]

This argument lacks merit.  The ICA correctly noted that the jury was first instructed on the elements of first degree assault, which were required to be proven by the prosecution beyond a reasonable doubt.  See Matuu, SDO at 9.  Specifically, the jury was required to find beyond a reasonable doubt that (1) "Defendant caused serious bodily injury to Frank Kapesi," and (2) "[t]hat the Defendant did so intentionally or knowingly."

---

[8]     "The use of deadly force upon or toward another person is justified if the defendant reasonably believes that deadly force is immediately necessary to protect himself on the present occasion against death or serious bodily injury."

[9]     "The use of force upon or toward another person is justified if the defendant reasonably believes that force is immediately necessary to protect himself on the present occasion against the use of unlawful force by the other person."

17

As "deadly force" means "force which the defendant uses with the intent of causing, or which he knows to create a substantial risk of causing, death or serious bodily injury," the elements of first degree assault inherently require a finding that "deadly force" was used by Matuu.  Additionally, the jury was further instructed that the finding as to assault in the first degree must be unanimous.  Thus, that the jury found Matuu guilty of assault in the first degree necessarily means the jury unanimously found beyond a reasonable doubt that Matuu had used "deadly force."  Accordingly, Matuu's specific concern that the jury may not have unanimously agreed that he used "deadly force" lacks basis.

### 2. The ICA erred in relying on the circuit court's general unanimity instruction in its analysis.

We next take a closer examination of the justification instructions given the nature of Matuu's issue on appeal, whether the justification instructions' lack of an express unanimity requirement rendered the jury instructions, when viewed as a whole, prejudicially insufficient, erroneous, inconsistent, or misleading, and whether it affirmatively appears from the record as a whole that the error was not prejudicial.  See Kassebeer, 118 Hawai'i at 504, 193 P.3d at 420.

As provided in HRS § 702-205(b) (2014), the negativing of certain defenses is an element of an offense:

18

> **Elements of an offense.** The elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct, as:
> (a)   Are specified by the definition of the offense, and
> (b)   Negative a defense (other than a defense based on the statute of limitations, lack of venue, or lack of jurisdiction).

HRS § 702-205.  Thus, the State was required to prove beyond a reasonable doubt that Matuu's self-defense or defense-of-others justification was "negative[d]."  Id.; see HRS § 701-114 (2014) ("[N]o person may be convicted of an offense unless the following are proved beyond a reasonable doubt . . . [e]ach element of the offense . . . .").

The circuit court's general unanimity instruction stated that "[i]n order for the prosecution to prove an element, all twelve jurors must unanimously agree that the same act has been proved beyond a reasonable doubt."  In addition, the circuit court instructed the jury that "[t]he burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified."

However, the general unanimity instruction required only that all jurors unanimously agree that the same act be proven beyond a reasonable doubt with respect to an "element" of an offense.  Although negativing Matuu's justification defenses is, as a matter of law, an element of Assault in the First Degree, see HRS § 702-205(b), the circuit court did not include the justifications of self-defense or defense-of-others as an

"element" of Assault in the First Degree.  The circuit court also did not include in the justifications instructions the requirement that jurors must unanimously conclude the prosecution had disproven the defenses beyond a reasonable doubt.  Thus, it may not have been readily apparent to the jurors that the general unanimity instruction regarding the "elements" of an offense applied to the prosecution's negativing of Matuu's self-defense and defense-of-others justifications.

The ICA did not observe that the unanimity instruction given by the circuit court applied only to "elements" identified by the circuit court, and therefore did not clearly apply to the negativing of Matuu's justification defenses.  To the extent the ICA's SDO stated that the circuit court's unanimity instruction applied to the justification instructions, we now clarify the ICA decision.[10]

---

[10] Although this court has held that a defendant was not prejudiced when the defenses of self and others were not included in the elements instructions of the charged crime, see State v. Augustin, 101 Hawaiʻi 127, 63 P.3d 1097 (2002), as this court has stated, the right embodied in Hawaiʻi Rules of Penal Procedure ("HRPP") Rule 31(a) requiring that a verdict be unanimous is a substantial one.  See State v. Arceo, 84 Hawaiʻi 1, 33, 928 P.2d 843, 875 (1996).  To the extent the ICA's SDO suggests that a specific unanimity instruction is not needed for justifications such as self-defense and defense-of-others warrants further examination, as this court has provided only limited circumstances in which a specific unanimity instruction is not required.  See, e.g., State v. Rapoza, 95 Hawaiʻi, 22 P.3d 968 (2001) (concluding that a specific unanimity instruction was not required "if the conduct element of an offense is proved by the prosecution to have been a series of acts constituting a continuous course of conduct and the offense is statutorily defined in such a manner as to not preclude it from being a 'continuous offense'").

The circuit court's instructional error, however, was not prejudicial. In explaining why the jury instructions, when viewed as a whole, were not prejudicially insufficient erroneous, inconsistent, or misleading, the ICA correctly noted:

> In addition, "[j]ury instructions . . . must be considered as a whole. Moreover, a refusal to give an instruction that correctly states the law is not in error if another expressing a substantially similar principle is given." Here, the court sufficiently instructed the jury regarding unanimity. The court first stated that in order to convict, the jury must unanimously agree to each element of the crime beyond a reasonable doubt.[11] Then the court gave a general unanimity instruction.[12] In addition, in the instruction for self-defense, the court instructed the jury that "[t]he burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified. If the prosecution does not meet its burden, then you must find the defendant not guilty." The additional unanimity instruction requested by Matuu was unnecessary.

Matuu, SDO at 10-11. As previously discussed, the circuit court had instructed: "The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified. If the prosecution does not meet its burden,

---

[11] It is not entirely clear to which specific instruction the ICA refers. The "presumption of innocence/reasonable doubt" instruction does not include unanimity language.

[12] Presumably, the "general unanimity instruction" refers to the instruction patterned on Instruction No. 8.02 of the Hawai'i Pattern Jury Instructions. The circuit court's instruction stated:

> The law allows the introduction of evidence for the purpose of showing that there is more than one act upon which proof of an element of an offense may be based. In order for the prosecution to prove an element, all twelve jurors must unanimously agree that the same act has been proved beyond a reasonable doubt.

then you must find the defendant not guilty."[13]  The circuit court had also instructed the jury that "[a] verdict must represent the considered judgment of each juror, and in order to reach a verdict, it is necessary that each juror agree thereto. In other words, your verdict must be unanimous."

When these instructions are read together, a juror, who does not find the State to have met its burden of proving beyond a reasonable doubt that Matuu's use of deadly force was not justified, "must find the defendant not guilty."  Because "juries are presumed to . . . follow all of the trial court's instructions," State v. Knight, 80 Hawai'i 318, 327, 909 P.2d 1133, 1142 (1996) (quoting Sato v. Tawata, 79 Hawai'i 14, 21, 897 P.2d 941, 948 (1995)), each of the jurors must have unanimously determined that the State met its burden of proving beyond a reasonable doubt that Matuu's use of deadly force was not justified.  As such, based on the record as a whole, the circuit court's instructions were not "prejudicially insufficient, erroneous, inconsistent, or misleading."  See Kassebeer, 118 Hawai'i at 504, 193 P.3d at 420.

Thus, although the ICA did not refer to the "unanimous verdict" instruction, it correctly concluded that the jury

_____

[13]    This appears to explain in lay terms to the jury that the prosecution's burden of negating Matuu's self-defense justification is indeed an "element."  However, it does not imply that the general unanimity instruction applies to the self-defense instruction, as the ICA appears to have suggested.

instructions, when viewed as a whole, were not prejudicially insufficient, erroneous, inconsistent, or misleading.  See Matuu, SDO at 11.

The unanimity requirement as to negativing the defenses would have been much clearer to the jury, however, if it was specifically included in the instructions regarding the State's burden to negative the justification defenses.  We therefore provide guidance that the circuit courts should follow this practice.

**B.    Substantial Evidence Supports the Negativing of Matuu's Justifications of Self-defense and Defense-of-others**

Matuu also argues that there was insufficient evidence to negative the defenses of self-defense and defense-of-others. This argument also lacks merit.

Once evidence of justification has been adduced, the prosecution has the burden of disproving it beyond a reasonable doubt.  See State v. Culkin, 97 Hawai'i 206, 215, 35 P.3d 233, 242 (2001) (citing HRS §§ 702-205(b), 703–301(1) (1993); State v. Lubong, 77 Hawai'i 429, 431, 886 P.2d 766, 768 (App. 1994)). The test for assessing a defendant's self-protection justification pursuant to HRS § 703-304 (2014)[14] involves two

---

[14]     **Use of force in self-protection.**  (1) Subject to the provisions of this section and of section 703-308, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary
(continued . . .)

23

prongs because HRS § 703-300 (2014) defines "believes" as

"reasonably believes":

> The first prong is subjective; it requires a determination of whether the defendant had the requisite belief that deadly force was necessary to avert death, serious bodily injury, kidnapping, rape, or forcible sodomy.
>
> ....
>
> If the State does not prove beyond a reasonable doubt that the defendant did not have the requisite belief that deadly force was necessary, the factfinder must then proceed to the second prong of the test. This prong is objective; it requires a determination of whether a reasonably prudent person in the same situation as the defendant would have believed that deadly force was necessary for self-protection.

Culkin, 97 Hawai'i at 215, 35 P.3d at 242 (quoting Lubong, 77

Hawai'i at 433, 886 P.2d at 770).  On appeal, Matuu argues that

substantial evidence does not exist to support the requisite

findings under either prong.

As the ICA discussed, even assuming Matuu had the requisite

belief that his use of force was necessary (prong 1), there was

substantial evidence in the record to support a finding that a

reasonably prudent person in the same situation as Matuu would

not have believed that the force exercised by Matuu was

immediately necessary for self-protection (prong 2).  See Matuu,

---

(. . . continued)
> for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.
>     (2) The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.
>     . . . .

HRS § 703-304.

SDO at 6. For example, Matuu testified that he was able to "break free" when Kapesi intervened. Accordingly, a person of reasonable caution could conclude that upon "break[ing] free," it was not reasonable for Matuu to then go to the kitchen, obtain a knife, and return to stab Frank, who was unarmed. Additionally, although Matuu testified he recalled grabbing only one knife and stabbing Frank once, the autopsy report showed Frank was stabbed multiple times and two bloodied knife blades were recovered — one lodged in a wound track in Frank's chest and another on the floor near Frank's body. As noted by the ICA, a person of reasonable caution could conclude "that it was [not] necessary [for Matuu] to stab Frank in the torso multiple times to protect himself against death or serious injury." Matuu, SDO at 7.

A similar two-prong subjective/objective approach is necessary to analyze a defense-of-others justification pursuant to HRS § 703-305 (2014).[15] As to prong 1, or the subjective inquiry, "[t]he commentary to HRS § 703–305 states that this

---

[15] **Use of force for the protection of other persons.** (1) Subject to the provisions of this section and of section 703-310, the use of force upon or toward the person of another is justifiable to protect a third person when:
　　(a) Under the circumstances as the actor believes them to be, the person whom the actor seeks to protect would be justified in using such protective force; and
　　(b) The actor believes that the actor's intervention is necessary for the protection of the other person.
. . . .

HRS § 703-305.

section 'permits a person to use force to protect another person when [(a)] <u>the actor believes the other person would have been justified in using force to protect himself</u> and [(b)] he believes that his intervention is necessary to protect the other person.'" State v. Mark, 123 Hawai'i 205, 220, 231 P.3d 478, 493 (2010) (emphasis in original) (footnote omitted). Prong 2, or the objective inquiry, is necessary because, as noted previously, "believes" means "reasonably believes." HRS § 703-300.

The ICA's analysis of whether sufficient evidence was presented to negative Matuu's defense-of-others justification focused solely on prong 1(a). It first states that the jury may have simply believed Kapesi's testimony over Matuu's. Thus, with respect to prong 1(a), the jury could have concluded that "although Frank slammed Kapesi to the ground, Frank did not hit Kapesi and Kapesi had regained his wind and was on his feet trying to keep Frank and Matuu apart when Frank was stabbed." Matuu, SDO at 7. Accordingly, "the jury was well within its province to conclude that the evidence proved beyond a reasonable doubt that Kapesi would not have been justified in stabbing Frank under these circumstances." Matuu, SDO at 7-8. In other words, a person of reasonable caution could have relied on Kapesi's testimony (and disbelieved Matuu's testimony) that Frank did not punch Kapesi when Kapesi intervened in the January

26

24, 2015 altercation, and therefore conclude that Matuu did not have the requisite subjective belief that Kapesi would have been justified in stabbing Frank.

Similarly, with respect to prong 1(b), substantial evidence supports the conclusion that Matuu did not actually "believe that [his] intervention [wa]s necessary for the protection" of Kapesi.  See HRS § 703-305(b).  For example, as stated previously, a person of reasonable caution could have concluded that Frank did not punch Kapesi after Kapesi attempted to separate Frank and Matuu, and therefore Matuu did not believe it was necessary for him to intervene.

A person of reasonable caution could also have concluded that even if Frank had punched Kapesi on January 24, 2015, Matuu was nevertheless unconcerned with Kapesi's well-being.  At trial, Matuu testified that because he was "scared" Frank would target him after Frank was "done with" Kapesi, he needed to "protect[] himself" by grabbing a knife from the kitchen.  However, Matuu also testified that after stabbing Frank, Matuu said to Frank: "I told you, bro.  I told you to stop, but you was pushing me, and you was bothering me, and you was telling me you was going beat me up and put me in the hospital."  Because Matuu said nothing about Frank punching Kapesi, and nothing in Matuu's testimony showed he was otherwise concerned with Kapesi's well-being, a person of reasonable caution could have

27

concluded that Matuu was not concerned about Kapesi, and therefore conclude that Matuu did not believe that he needed to use force against Frank to protect Kapesi.

Yet, even if it were assumed that both parts of prong 1 were satisfied – that Matuu had the requisite subjective belief that (a) Kapesi would have been justified in using force to protect himself against Frank, and (b) Matuu's intervention was necessary to protect Kapesi — there was sufficient evidence to support a jury's finding as to Prong 2, i.e., that Matuu's belief was not "reasonable."

Evidence shows that Kapesi was not afraid of Frank despite being punched by him on a previous occasion and requiring stitches; Kapesi voluntarily came out of his room to stop Frank and Matuu's fight even though Frank was "high on drugs"; and the only injury Kapesi appeared to have suffered from the incident was a stab wound to the hand caused by Matuu.  Thus, a person of reasonable caution could have concluded that Kapesi would not have been justified in stabbing Frank multiple times to protect himself against Frank's punches, or that Matuu's intervention was necessary to protect Kapesi, and therefore, any subjective belief Matuu may have had was not reasonable.

## V.  Conclusion

For the foregoing reasons, we affirm the ICA's November 17, 2017 Judgment on Appeal entered pursuant to its SDO.  The ICA

28

correctly concluded that Matuu's conviction was supported by substantial evidence and that the circuit court's jury instructions were not prejudicially erroneous or misleading. However, we provide guidance that the requirement for unanimity should specifically be included in justification instructions.

| | |
|---|---|
| Jon N. Ikenaga<br>for petitioner | /s/  Mark E. Recktenwald |
| | /s/  Paula A. Nakayama |
| Stephen K. Tsushima<br>for respondent | /s/  Sabrina S. McKenna |
| | /s/  Richard W. Pollack |
| | /s/  Michael D. Wilson |

