**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000620
11-SEP-2020
08:01 AM**

NO. CAAP-18-0000620

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
ILAI F. LUAMANU, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 1PC161001333)

SUMMARY DISPOSITION ORDER
(By:  Leonard, Presiding Judge, Chan and Wadsworth, JJ.)

Defendant-Appellant Ilai F. Luamanu (Luamanu) appeals from the July 12, 2018 Judgment of Conviction and Sentence, entered by the Circuit Court of the First Circuit (circuit court).[1]  Plaintiff-Appellee State of Hawaiʻi (State) charged Luamanu with Murder in the Second Degree, in violation of Hawaii Revised Statutes (HRS) §§ 707-701.5 (2014) and 706-656 (2014). After a jury trial, Luamanu was convicted of the lesser included offense of Manslaughter, in violation of HRS § 707-702 (2014).

Luamanu asserts three points of error on appeal: (1) the circuit court erred in precluding the defense from cross-examining a prosecution witness as to his pending felony charges and cross-examining the investigating detective as to the

---

[1]    The Honorable Shirley M. Kawamura presided over the jury trial and entered the Judgment of Conviction and Sentence.  The Honorable Paul B.K. Wong presided over various pretrial proceedings.

prior criminal history of multiple witnesses and potential witnesses; (2) the jury instruction on self-defense was prejudicially erroneous; and (3) there was insufficient evidence that Luamanu was the person who stabbed the decedent.

Upon careful review of the record and briefs submitted by the parties and having given due consideration to the arguments and issues they raise, as well as the relevant legal authority, we resolve Luamanu's points of error as follows.

A.  Exclusion of Evidence

Luamanu argues that the circuit court erred in precluding the defense from cross-examining a prosecution witness as to his pending felony charges and cross-examining the investigating detective as to the prior criminal history of multiple witnesses and potential witnesses.

> As a general rule, the appellate court reviews evidentiary rulings for abuse of discretion. However, when there can only be one correct answer to the admissibility question, or when reviewing questions of relevance under Hawaiʻi Rules of Evidence (HRE) Rules 401 and 402, the appellate court applies the right/wrong standard of review. The trial court's determination that the proffered evidence is probative of bias, interest or motive is reviewed under the right/wrong standard.

State v. Acacio, 140 Hawaiʻi 92, 98, 398 P.3d 681, 687 (2017) (block quote format altered) (brackets, quotation marks, and citations omitted).

> Under the confrontation clauses of the Hawaiʻi and United States Constitutions, a defendant has the right to confront adverse witnesses, and a violation of this right is subject to the harmless beyond a reasonable doubt standard. State v. Balisbisana, 83 Hawaiʻi 109, 113-114, 924 P.2d 1215, 1219-20 (1996). Under this standard, we must "determine whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Id. at 114, 924 P.2d at 1220.

State v. White, 92 Hawaiʻi 192, 198, 990 P.2d 90, 96 (1999).

Luamanu first asserts that the circuit court erred in precluding the defense from cross-examining Ian Roy Meyers (Meyers), a prosecution witness, as to his criminal record for purposes of showing bias, interest, and motive to testify falsely.

2

HRE Rule 609.1 (2016) provides:

> **Rule 609.1  Evidence of bias, interest, or motive.**
> (a)  General rule.  The credibility of a witness may be attacked by evidence of bias, interest, or motive.
>
> (b)  Extrinsic evidence of bias, interest, or motive. Extrinsic evidence of a witness' bias, interest, or motive is not admissible unless, on cross-examination, the matter is brought to the attention of the witness and the witness is afforded an opportunity to explain or deny the matter.

The supreme court has established that "bias, interest, or motive is <u>always relevant</u> under HRE Rule 609.1." <u>State v. Levell</u>, 128 Hawaiʻi 34, 40, 282 P.3d 576, 582 (2012) (emphasis in original) (brackets omitted) (quoting <u>State v. Estrada</u>, 69 Haw. 204, 220, 738 P.2d 812, 823 (1987)).  "[T]he appropriate inquiry is whether the trier of fact had sufficient information from which to make an informed appraisal of the witness's motives and bias." <u>Id.</u> (citing <u>Balisbisana</u>, 83 Hawaiʻi at 116, 924 P.2d at 1222).

On June 24, 2016, Meyers was charged with the felony of burglary in the second degree.  The incident in the case before us occurred on August 7, 2016, and Luamanu was indicted on August 17, 2016.  On January 10, 2017, Luamanu filed a notice of intent to use evidence of Meyers's pending criminal charge at trial.  On January 18, 2017, the State filed Motion in Limine #3, seeking, inter alia, to preclude evidence of Meyers's pending criminal charge.  Meyers entered a no contest plea to his burglary charge on March 21, 2017, and was sentenced to four years of probation on June 6, 2017.  On December 26, 2017, the circuit court in this case filed an order granting the State's Motion in Limine #3 in part to exclude all evidence of Meyers's criminal record.  On April 24, 2018, the circuit court orally denied Luamanu's motion to reconsider its ruling to exclude evidence of Meyers's criminal record.  Luamanu's trial began on April 30, 2018, and Meyers testified as a prosecution witness on May 1, 2018.

The Hawaiʻi Supreme Court and this court have held that a complaining witness can be cross-examined about pending

3

criminal charges for purposes of showing motive or bias. See State v. Brown, 145 Hawaiʻi 56, 61-62, 446 P.3d 973, 978-79 (2019) (holding that the trial court erred in barring cross-examination as to complaining witness's pending charges arising from the same incident, and her supervised probation status resulting from a previous assault conviction); Balisbisana, 83 Hawaiʻi at 116-17, 924 P.2d at 1222-23 (holding that the trial court erred in precluding cross-examination regarding complaining witness's conviction of harassing defendant because, absent such evidence, the jury lacked information necessary to appraise witness's bias against defendant and motive to fabricate charges against him); State v. Saboq, 108 Hawaiʻi 102, 112, 117 P.3d 834, 844 (App. 2005) (holding that a complaining witness's pending sentencing in two other criminal matters was relevant and probative of a potential bias or motive for testifying in favor of the State). Similarly, the United States Supreme Court has held that a defendant may question a prosecution witness about the witness's pending probation status to explore the possible biases, prejudices, or motives of the witness. Davis v. Alaska, 415 U.S. 308, 316-18 (1974).

Here, the circuit court precluded Luamanu from cross-examining Meyers about his pending criminal charge because it concluded that the charge was not for a crime that involved dishonesty and use of such evidence was not allowed under HRE Rules 608 (2016)[2] and 403 (2016)[3]. We conclude that this was

---

[2]    HRE Rule 608 provides:

**Rule 608  Evidence of character and conduct of witness.**
(a)  Opinion and reputation evidence of character.  The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:

(1)    The evidence may refer only to character for truthfulness or untruthfulness, and

(2)    Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

error.

Meyers had a pending criminal charge when the incident in this case occurred and the case was initiated. Meyers pleaded no contest and was sentenced to probation prior to the beginning of Luamanu's trial. When he testified for the prosecution in this case, Meyers was on probation and was subject to revocation or modification of his probation. Under these circumstances, information about his probation status could have served as a basis for the jury to conclude that Meyers was biased or had motivation to testify in favor of the State, pursuant to HRE Rule 609.1. See Davis, 415 U.S. at 316-18. Without allowing such cross-examination, the jury did not have "sufficient information from which to make an informed appraisal of the witness's motives and bias." Levell, 128 Hawaiʻi at 40, 282 P.3d at 582. The circuit court therefore erred in precluding Luamanu from cross-examining Meyers about his criminal charge and probation status.

Luamanu asserts that the error in precluding such cross-examination was not harmless beyond a reasonable doubt

---

(b) Specific instances of conduct. Specific instances of the conduct of a witness, for the purpose of attacking the witness' credibility, if probative of untruthfulness, may be inquired into on cross-examination of the witness and, in the discretion of the court, may be proved by extrinsic evidence. When a witness testifies to the character of another witness under subsection (a), relevant specific instances of the other witness' conduct may be inquired into on cross-examination but may not be proved by extrinsic evidence.

The giving of testimony, whether by an accused or by any other witness, does not operate as a waiver of the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

[3] HRE Rule 403 provides:

**Rule 403 Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

because Meyers "provided testimony on the events prior to the stabbing and effectively exculpated the two Samoan males that had been at his apartment[.]"  The State responds that any error was harmless beyond a reasonable doubt because Meyers's testimony was cumulative of and corroborated by other evidence and testimony. We agree with the State that the error was harmless beyond a reasonable doubt.

> A trial court's denial of a defendant's constitutional right to impeach a witness for bias, motive, or interest is subject to the harmless beyond a reasonable doubt standard. Acacio, 140 Hawaiʻi at 98, 398 P.3d at 687.  This standard is applied by "examin[ing] the record and determin[ing] whether there is a reasonable possibility that the error complained of might have contributed to the conviction." Id.  Factors determinative of whether a violation of the constitutional right to impeach might have contributed to the conviction include: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  Levell, 128 Hawaiʻi at 42, 282 P.3d at 584 (quoting Balisbisana, 83 Hawaiʻi at 117, 924 P.2d at 1223).

Brown, 145 Hawaiʻi at 62, 446 P.3d at 979.

Upon review of Meyers's testimony, we conclude that Meyers's credibility was not important to the outcome of the case.  Contrary to Luamanu's assertion, Meyers did not "effectively exculpate[] the two Samoan males" that were at his apartment prior to the incident.  Luamanu does not specify which part of Meyers's testimony "effectively exculpated" these individuals.  Based on our review of the record, the only time Meyers mentioned the two Samoan males was on cross-examination, when Meyers confirmed that two Samoan males, one with a white t-shirt and one with a gray t-shirt, hat, and ponytail, came to his apartment.  The man with the gray t-shirt, whose name Meyers did not know, went upstairs to Meyers's apartment to talk about a car that was stolen.  Upon hearing a "ruckus," Meyers and the man in the gray t-shirt went outside.  The man in the gray t-shirt, who had walked ahead of Meyers, headed in the direction of the

Foodland on Kinau Street while the decedent and Luamanu were running around a vehicle. Meyers did not mention the whereabouts of the man in the gray t-shirt after that point and did not mention at all the whereabouts of the man in the white t-shirt. Meyers's testimony therefore did not "effectively exculpate[]" the two Samoan males. Furthermore, a surveillance video recording of the parking lot on the corner of Makiki Street and Kinau Street, entered in evidence as State's Exhibit 85, corroborated Meyers's testimony that the man in the gray t-shirt was initially walking eastbound on Kinau Street when Meyers saw Luamanu chasing the decedent.

Luamanu also maintains that Meyers's testimony covered moments where "there was a gap or omission in the surveillance footage" but does not specify what part of Meyers's testimony did so. Naturally, because the surveillance footage was obtained from various cameras at different locations around the vicinity of the incident, there were moments that are unaccounted for in the surveillance footage. Based on our review, however, Meyers's testimony did not provide any material information that was not reflected in the footage or other witness testimony.

The material portions of Meyers's testimony established that: Luamanu chased the decedent around a vehicle in the Makiki Liquor Store parking lot on the corner of Makiki Street and Kinau Street, and then down Makiki Street toward South Beretania Street; at one point, Luamanu made a throwing or punching motion with his arm while chasing the decedent but Meyers could not see if any physical contact was made; Meyers could not see if Luamanu had anything in his hand; moments later, the decedent, returning from the direction he and Luamanu had run, stumbled into the street while holding his side; and there were multiple bystanders but no other person was involved in the chase. Meyers's testimony was corroborated by the surveillance footage and testimony from other witnesses, most notably, that of Elijah Davenport, who had been driving on Makiki Street at the time.

The only portion of Meyers's testimony that was not corroborated by other testimony or evidence pertained to his actions prior to hearing the "ruckus" and going outside of his apartment, which was immaterial to the case. Accordingly, the circuit court's error in precluding Luamanu from cross-examining Meyers as to his criminal charge and probation status was harmless beyond a reasonable doubt.

Luamanu also asserts that the circuit court erred in precluding the defense from cross-examining Lieutenant Brandon Nakasato (Lt. Nakasato)[4] as to the criminal histories of Meyers and three other witnesses to the incident. Luamanu contends that the criminal histories were relevant to question Lt. Nakasato as to why he failed to investigate the witnesses as possible suspects and to thus challenge whether the Honolulu Police Department conducted a full and fair investigation.

Luamanu relies on HRE Rule 404(b) (2016), which provides, in relevant part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

Luamanu argues that he did not intend to present evidence of the criminal records of these other individuals as propensity evidence, as barred by HRE Rule 404(b). Rather, he maintains that the evidence should have been allowed under the exception in HRE Rule 404(b) for evidence that is "probative of another fact that is of consequence to the determination of the action"--the other fact that is of consequence in this case being the thoroughness of Lt. Nakasato's investigation. As the State points out, Luamanu's theory appears to suggest that if an individual had a criminal history, his or her mere proximity to a

_____

[4] At the time of the incident, Lt. Nakasato was a detective.

crime, without more, is reason enough for that individual to be considered a suspect in the investigation of the crime. Such evidence would be speculative without demonstration of further relevance.

The criminal records of these individuals would have been relevant to the thoroughness of Lt. Nakasato's investigation if the criminal records of the individuals made it more or less probable that Lt. Nakasato's investigation was incomplete. See HRE Rule 401 (2016). The only way such evidence would make it more probable that Lt. Nakasato conducted an incomplete investigation is if the criminal records of the other individuals somehow implicated them in the crime at hand so as to be considered suspects. Luamanu did not provide any connection between the prior criminal records of the other individuals and the crime in this case beyond mere speculation based on their criminal histories.

Furthermore, Luamanu asserts that this evidence was "necessary and crucial to the theory of the defense" and without it, Luamanu "was not able to adequately confront [Lt.] Nakasato." We disagree. Luamanu was free to question Lt. Nakasato about the thoroughness of his investigation and the process by which he ruled out suspects without mentioning the criminal records of these other individuals. Nothing in the record indicates that Luamanu was deprived of a full defense.

B.   Jury Instructions

Luamanu next argues that the jury instruction on self-defense was prejudicially erroneous and misleading. Luamanu did not object to this instruction at trial and we review this issue for plain error and whether any error was harmless beyond a reasonable doubt. See State v. Nichols, 111 Hawaiʻi 327, 337, 141 P.3d 974, 984 (2006).

The jury instruction on self-defense provided, in relevant part, as follows:

> Self-defense is a defense to the charges of Murder in

9

the Second Degree, and [its] included offenses . . . . Self-defense involves consideration of two issues. First, you must determine whether the defendant did or did not use "deadly force." Second, you must determine whether the force used was justified. The burden is on the prosecution to prove beyond a reasonable doubt that the force used by the defendant was not justified. If the prosecution does not meet its burden, then you must find the defendant not guilty.

The first issue is: Did the defendant use "deadly force?"

"Deadly Force" means force which the defendant uses with the intent of causing, or which he knows to create a substantial risk of causing, death or serious bodily injury.

"Force" means any bodily impact, restraint, or confinement, or the threat thereof.

Serious bodily injury means bodily injury which creates a substantial risk of death or which causes serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

If you determine that the defendant used "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Used." If you determine that the defendant did not use "deadly force," then you are to proceed to the section in this instruction entitled "Deadly Force Not Used." You must then follow the law in the applicable section to determine the second issue, which is whether the force used by the defendant was justified.

Luamanu asserts that the instruction was prejudicially erroneous and misleading because it failed to clarify that the prosecution was required to prove that the defendant used "deadly force" beyond a reasonable doubt. Luamanu maintains that the instructional error was not harmless because the jury "may have evaluated Luamanu's actions as 'deadly force' without requiring that the State prove he used 'deadly force' beyond a reasonable doubt."

The Hawaiʻi Supreme Court addressed a similar issue in State v. Matuu, 144 Hawaiʻi 510, 445 P.3d 91 (2019). In Matuu, similar to here, the supreme court reviewed for error a self-defense instruction that did not require the jury to unanimously find beyond a reasonable doubt that the defendant used "deadly force." Id. at 517-18, 445 P.3d at 98-99. The court noted that the jury in that case was first instructed on

10

the elements of assault in the first degree (as a lesser included offense of the charged offense of murder in the second degree) which required the jury to find beyond a reasonable doubt that (1) the defendant caused serious bodily injury to the victim and (2) the defendant did so intentionally or knowingly. Id. at 518, 445 P.3d at 99. The court held that the elements of assault in the first degree inherently require a finding that the defendant used "deadly force," which was defined as "force which the defendant uses with the intent of causing, or which he knows to create a substantial risk of causing, death or serious bodily injury." Id. Thus, the jury's conviction of the defendant of assault in the first degree necessarily entailed that the jury unanimously found beyond a reasonable doubt that the defendant used deadly force and the supreme court held that there was no basis for the defendant's concern that the jury might not have unanimously determined beyond a reasonable doubt that he used deadly force. Id.

Here, the jury was instructed on the lesser included offense of manslaughter, which required that the jury find beyond a reasonable doubt that (1) Luamanu caused the death of the decedent and (2) he did so recklessly. The jury was further instructed that "[a] person acts recklessly with respect to his conduct when he consciously disregards a substantial and unjustifiable risk that the person's conduct is of the specified nature." Accordingly, in order to convict Luamanu of manslaughter, the jury was required to find beyond a reasonable doubt that Luamanu knew there was a substantial and unjustifiable risk that his conduct could cause the decedent's death and that Luamanu consciously disregarded that risk. See State v. Schnabel, 127 Hawaiʻi 432, 450 n.33, 279 P.3d 1237, 1255 n.33 (2012) (noting that in order to prove the requisite reckless state of mind as an element of the manslaughter offense, the prosecution was required to prove that defendant knew there was a substantial and unjustifiable risk that his conduct could cause

11

the death of another person and that defendant consciously disregarded that risk).  Like the elements of assault in the first degree in <u>Matuu</u>, the elements of manslaughter inherently require a finding that the defendant used "deadly force," or "force which the defendant uses with the intent of causing, or <u>which he knows to create a substantial risk of causing</u>, death or serious bodily injury."  (Emphasis added.)  Thus, Luamanu's manslaughter conviction establishes that the jury found beyond a reasonable doubt that the defendant used deadly force.  Any alleged error with respect to the self-defense instruction was therefore harmless beyond a reasonable doubt.

C.    <u>Sufficiency of Evidence</u>

Luamanu asserts that there was insufficient evidence to support his conviction because there was no evidence that directly established that Luamanu stabbed the decedent.

Appellate courts review the sufficiency of the evidence at trial for "substantial evidence."  <u>State v. Kalaola</u>, 124 Hawaiʻi 43, 49, 237 P.3d 1109, 1115 (2010).  Substantial evidence in this context is defined as "credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."  <u>Id.</u>  Evidence adduced in the trial court must be considered in the strongest light for the prosecution when the appellate court passes on the legal sufficiency of such evidence to support a conviction. <u>State v. Batson</u>, 73 Haw. 236, 248, 831 P.2d 924, 931 (1992).

Luamanu is correct in his assertion that there was no direct evidence establishing that Luamanu stabbed the decedent.

> It is a basic rule, however, that guilt in a criminal case may be proved beyond a reasonable doubt on the basis of reasonable inferences drawn from circumstantial evidence. No greater degree of certainty is required where a conviction is based solely on circumstantial evidence rather than on direct evidence.

<u>State v. Bright</u>, 64 Haw. 226, 228, 638 P.2d 330, 332 (1981) (citations omitted).

Witness testimony establishes that Luamanu was chasing

after the decedent in the general vicinity of the incident.  The decedent, followed by Luamanu, eventually went down Makiki Street where they were out of the view of witnesses.  The surveillance footage confirms such testimony.  The surveillance footage also depicts Luamanu returning from the direction he had been chasing the decedent, followed shortly by the decedent holding the left side of his body.  Witness testimony establishes that the decedent eventually stumbled onto the road and across the street while bleeding profusely until he was eventually helped by the witness.  There was no evidence that any other individual was involved in the chase down Makiki Street.  The medical examiner testified that the decedent's cause of death was a stab wound to the lower left chest area.

The circumstantial evidence is of sufficient quality and probative value to enable the jury to make reasonable inferences in determining that Luamanu recklessly caused the death of the decedent.  See HRS § 707-702.  Accordingly, there was substantial evidence to support Luamanu's conviction for manslaughter.

Based on the foregoing, we affirm the Circuit Court of the First Circuit's July 12, 2018 Judgment of Conviction and Sentence.

DATED:  Honolulu, Hawai‘i, September 11, 2020.


On the briefs:

Sonja P. McCullen,
for Plaintiff-Appellee.

Carmel A. Lui-Kwan,
for Defendant-Appellant.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Derrick H. M. Chan
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge