**STATE OF HAWAI'I**, Plaintiff–Appellee, v. **WILLIAM E. STRAUB**, Defendant–Appellant

NO. 15714

(FC–CR. NO. 91–2565)

JANUARY 25, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendant William E. Straub (William) appeals the family court's October 23, 1991 judgment convicting him of abuse of

family and household members, Hawai'i Revised Statutes (HRS) § 709–906 (1985). William was sentenced to ten days in jail, eight of which were suspended upon conditions. The family court denied William's request for a stay of the sentence pending appeal.

Stated generally, the issue on appeal is whether the family court's decision is supported by substantial evidence. Stated specifically, the issue is whether the State satisfied its burden of introducing substantial evidence to prove beyond a reasonable doubt that the physical response of a driver of an automobile moving in busy traffic to being physically attacked for a second time by his passenger/household member was not justified self–protection and/or choice of evils. We conclude that the State failed its burden with respect to the self–protection justification defense. Therefore, we reverse the October 23, 1991 judgment. We do not decide whether the State failed its burden with respect to the choice of evils justification defense.

## FACTS

William and Terry Muller Straub (Terry) lived together for five years, then separated for approximately eight months, and then resumed living together on approximately November 1, 1990. They were married on June 21, 1991.

On Thursday, May 16, 1991, Terry's doctor's office informed her that a mammogram done five months previously had revealed two lumps that required a biopsy. The doctor's office did not know why it had taken so long for it to receive that information.

On Friday, May 17, 1991, a little more than a month prior to their marriage, Terry was patronizing the Creekside Lounge in Kailua. From his construction company work, William arrived at the Creekside Lounge at 5:30 or 6:00 p.m., about forty–five minutes later than Terry. William, who weighed 190 pounds at the time of the October 23, 1991 trial, had three beers while at the Creekside Lounge. Terry, who weighed 137 pounds at time of the trial, had three or four gin or vodka mixed drinks.

While William and Terry were at the Creekside Lounge, Terry had a person–to–person conversation with a male who had been Terry's boyfriend (Ex–boyfriend) for a time during her eight–month separation from William. William was not happy about Ex–boyfriend's presence and Terry's conversation with him. While William and Terry sat and had another drink, William communicated his unhappiness and discomfort to Terry. Terry testified that William "asked — . . . — if I'd like — . . . to go down the street to this new cocktail lounge that opened up because they had entertainment. And I said that sounded fine."

William and Terry left the Creekside Lounge and went to the car. William was driving. Terry was a passenger in the right front seat. It was about 8:00 p.m. on a Friday. William testified that "we were just going to go home and then go on out for the evening." William was approaching "a major intersection" in Kailua where Oneawa Street meets Pali Highway. William was approaching the intersection from the south, travelling on the road that becomes Oneawa Street where it crosses the intersection. William's car was in the left of the lanes that proceed straight through the intersection and become Oneawa Street.

When William was a short distance from the intersection, the traffic lights were permitting traffic from Oneawa Street. "[A] whole bunch of cars" were coming towards him. Suddenly, according to William, "I don't know if it was something I said or — or whatever, but [Terry] started hitting me[.]" Both of Terry's arms were swinging. She was vigorously hitting William with her hands and fists on his head, shoulders, and the arm he was using to shield himself. During the attack, William's car swerved into the oncoming traffic and caused cars coming from the opposite direction to swerve to avoid them. William "backhanded" Terry with the back of his right hand, got her off of him, and swerved his car back into its lane. William did not know where this first backhand made contact with Terry and Terry did not appear to have been injured by it.

Then the light changed, permitting William to proceed on his course through the intersection to Oneawa Street. As he drove through the intersection, William yelled and screamed at Terry, telling her not to do to him what she did while he was driving. After Terry's first assault, William did not take any action to safely pull over and park the car because he "was just going home" and did not think it would happen again. However, immediately after William had driven through the intersection, Terry commenced a second surprise assault on William. Again, William responded by hitting Terry with the back of his right hand. This second back-hand, however, connected with Terry's nose and the right side of her face. Terry's nose bled profusely, Terry cried, and William drove home.

With respect to both backhands, William testified that he did them "[b]asically to save our lives. I believe there would have been an accident if I hadn't done something. ... I don't really even remember swinging. It's just more of a reaction. But I know I had to do something."

Terry did not remember anything between the time she left the Creekside Lounge and the time she arrived home.

Terry's nose was still bleeding after they got home. William thought her nose might be broken so he decided to take her to Castle Hospital. Terry's nose was not broken but William was arrested at Castle Hospital.

Terry left the hospital the next morning. At home she saw that her "whole right face was black and blue" and that she had a "complete[ly] swollen eye" and a "butterfly stitch" on her nose.

When William came home Terry

asked him what had happened and why he had hit me. And he said that I had started an argument in the car and — and he said if I didn't stop that — he said he pushed me away. And he said I started arguing with him again. And [William] said then that if I didn't knock it off that he would hit me. And he said that he did.

The bench trial occurred on October 23, 1991. In its closing argument, the State argued in relevant part as follows:

[William] would like the Court to believe that it was some sort of self[–]defense on Oneawa Street.

. . . He testified that he didn't have any injuries and he was fine.

. . . [I]t defies reason to believe that if her behavior had been that outrageous and obnoxious he would have kept driving.

The State would submit that this is convenient, its self[–]preservation. Your Honor, he was angry at Terry Muller on that evening and he beat her up in that car.

She testified that her nose was in a splint, . . . .

* * *

[Terry] would like the Court to believe that she doesn't remember the other parts. [Terry] said that she didn't recall anything about the driving or the car being part of the conversation. She asked him how she became injured and he told her that he did it.

Contrary to the State's representation, Terry did not testify that her nose was in a splint.

In its rebuttal argument, the State argued in relevant part as follows:

[W]hat [defense counsel] neglects to address is the fact that there was motive for [William] to beat up his wife. He was the one that was angry because of her seeing his [sic] boyfriend.

[Terry] testifed that he did say that they were having an argument . . . . William was not only mad about the [Ex–boyfriend] incident . . . but his argument continued regarding [Ex–boyfriend] into the car.

* * *

And again, choice of evils. Your Honor, you don't back hand somebody twice while you're driving, you stop the car if in fact that's the way things really happened.

\* \* \*

And the State would also submit that the extensiveness of her injuries indicate that there wasn't just one blow from a back hand, your Honor, but that there was much more force applied then [sic] that.

Contrary to the State's representation, Terry did not testify that William's argument regarding Ex–boyfriend continued in the car.

## FAMILY COURT'S DECISION

The family court orally decided in relevant part as follows:

[THE COURT:]    The Defense has raised basically two defenses.

One, defense of self[–]defense. With regard to the self[–]defense, the Court finds that the force used by the Defendant far exceeded the amount of force that would be necessary in this particular incident to justify the striking under the self[–]defense defense.

And therefore finds that the blow or the blows that the victim received were not the result of a self[–]defense type of blow.

With regard to the choice of evils defense, the Court also is not convinced that the only evil that the Defendant could choose was to use the type of force that — he did use against the victim.

It's the Court's position that his — the behavior that he should have taken would be to either stop the vehicle or pull the vehicle over.

He stated that possibly in that area he could not pull the vehicle over. But there's no reason why he could not have just stopped the vehicle. And that would have been a much less evil in the Court's view then [sic] — then [sic] continuing to strike his wife — or fiancee at that time — in the manner in which it's been described that it took place.

\* \* \*

THE COURT: — choice of evils was the evil that he elected to use was he struck the person at least twice with such force that he admitted his hand hurt the next day. It caused her severe injuries.

And the Court . . . there's no indication to the facts as to why he could not have just stopped the vehicle or why he could not have continued to defend the blows while he stopped the vehicle.

. . . [T]he Court just doesn't find it a reasonable choice of evils to strike the victim with such force and in such a manner as was described.

\* \* \*

THE COURT: If he had attempted maybe to grab her or to contain her in some way and inadvertently injured her, maybe that would be another matter. But even by his own testimony he lashed out, back handed her right in the face.

This — this does not constitute a proper choice of evils under these circumstances in the Court's view. And that's why the Court found that the [State] did meet it's burden beyond a reasonable doubt.

During the sentencing phase of the case, William disputed the allegation that he hit Terry because of his anger about her conversation with Ex–boyfriend. In response, the family court stated in relevant part as follows:

[THE COURT:] [W]ell, there are two versions before me. The theory of the Prosecutor's case is that you instigated this because you were jealous of the fact that she had gone over and talked to [Ex–boyfriend] — the former boyfriend — at the bar in front of you.

Your version is that you — you lashed at her because she was pummeling you while you were driving the car.

Now, the Prosecution's theory base — is based upon what happened at the bar, but it cannot be verified by the testimony of the victim, because the victim didn't remember what exactly happened in the car.

So, the Court will not hold the Prosecutor's theory of what happened against you as a matter of sentencing.

## APPLICABLE LAW

HRS § 709–906(1) (1985) states in relevant part as follows:

It shall be unlawful for any person, singly or in concert, to physically abuse a family or household member,

. . . .

For the purposes of this section "family or household member" means spouses or former spouses, parents, children, and persons jointly residing or formerly residing in the same dwelling unit.

HRS § 711–1106 (1985) states in relevant part as follows:

(1) A person commits the offense of harassment if, with intent to harass, annoy, or alarm another person, he:

(a) Strikes, shoves, kicks, or otherwise touches a person in an offensive manner or subjects him to offensive physical contact[.]

Two statutory justifications were asserted by William: self–protection and choice of evils.

The self–protection justification is expressed in HRS § 703–304(1) (1985) which states in relevant part as follows:

"[T]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion."

HRS § 703–300 (Supp. 1991) defines the terms "believes" and "unlawful force" in relevant part as follows:

> In this chapter, unless a different meaning is plainly required:
>
> "Believes" means reasonably believes.
>
> * * *
>
> "Unlawful force" means force which is employed without the consent of the person against whom it is directed and the employment of which constitutes an offense or would constitute an offense except for a defense not amounting to a justification to use the force[.]

The choice of evils justification is expressed in HRS § 703–302 (1985) as follows:

> (1) Conduct which the actor believes to be necessary to avoid an imminent harm or evil to himself or to another is justifiable provided that:
> (a) The harm or evil sought to be avoided by such conduct is greater than that sought to be prevented by the law defining the offense charged; and
> (b) Neither the Code nor other law defining the offense provides exceptions or defenses dealing with the specific situation involved; and
> (c) A legislative purpose to exclude the justification claimed does not otherwise plainly appear.

William did not, as he could have pursuant to Hawai'i Rules of Penal Procedure Rule 23(c), request findings of fact. Nevertheless, the family court's oral decision informs us that the family court did not disbelieve William's version of the events.

Where the defense is justification, once evidence of a fact, or a set of facts, which negatives penal liability has been introduced, the burden is on the prosecution to disprove the facts that have been introduced or to prove facts negativing the justification defense and to do so beyond a reasonable doubt. *State v. McNulty*, 60 Haw. 259, 262, 588 P.2d 438, 442 (1978), *cert denied* 441 U.S. 961, 99 S. Ct. 2406, 60 L. Ed. 2d 1066 (1979); *State v.Sanchez*, 2 Haw. App. 577, 578, 636 P.2d 1365, 1366 (1981); *State v. Realina*, 1 Haw. App. 167, 172–73, 616 P.2d 229, 233 (1980).

According to Professor Paul H. Robinson, *Criminal Law Defenses* § 121 (1984), all justification defenses have the following internal structure:

1. triggering conditions; and
2. response requirements:
   (a) necessity; and
   (b) proportionality.

## DISCUSSION

### Self–Protection Justification Defense

The family court did not disbelieve William's testimony of the facts. The family court decided, however, that William unreasonably struck Terry and that William struck Terry with unreasonable force.

The dispositive issue is whether substantial evidence in the record supports the family court's decision that, beyond a reasonable doubt, William did not reasonably believe that the fact of and/or the degree of his first backhand blow and/or his second backhand blow were immediately necessary to protect himself against the use of unlawful force by Terry. *State v. Smith*, 59 Haw. 456, 464, 583 P.2d 337, 343 (1978). We conclude that the family court's decision is not supported by substantial evidence.

The incident occurred at about 8:00 p.m. on a Friday night. As William, who weighed 190 pounds at the trial held five months

later, drove his car and approached a major intersection in Kailua in the third lane from the curb or the "fast lane or the center lane[,]" Terry, his passenger/household member who weighed 137 pounds at the trial held five months later, vigorously attacked William with both hands and fists causing William's car to swerve left toward oncoming traffic and causing oncoming traffic to swerve to avoid the car. William reacted with a backhand, turned the car back into its lane, and yelled and screamed at Terry not to interfere with his driving. There is no evidence of where this first backhand made contact with Terry or whether it caused any physical injury. Terry stopped attacking William and William reasonably believed that Terry would not resume her attack. William drove the car through the intersection toward his destination. Immediately after the car passed through the intersection and without warning, however, Terry again vigorously attacked William with both hands and fists. William again reacted with a backhand. This second backhand connected with Terry's face, cutting Terry's nose and causing it to bleed, and causing the right side of Terry's face to later turn black and blue.

The situation must be viewed from William's point of view when William was forced to choose a course of action. *See State v. Pemberton*, 71 Haw. 466, 796 P.2d 80 (1990). There is no evidence that William's first backhand was unnecessary and/or excessive force. William reasonably believed that it accomplished its mission. William reasonably did not expect Terry's second suprise attack. When Terry's second attack occurred and before William's second backhand, William knew that his first backhand and his vehement admonition were insufficient to deter the second attack and that more drastic action than his first backhand was necessary to deter Terry's attack and prevent a serious car accident. There is no evidence in the record to support a finding that stopping the car where it was or pulling it over to the side and stopping it were possible and reasonable alternatives. On the contrary,

William's description of the traffic scene and situation at the time of the incident showed that neither of those choices was possible or reasonable. Likewise, there is no evidence in the record to prove that William reasonably could have accomplished his mission by delivering a blow with less force or, assuming the law required him to take this route if it were reasonably available to him, by continuing to defend against the second attack while he safely stopped the vehicle. Therefore, the State failed its burden of introducing substantial evidence disproving William's facts or proving facts negativing William's self–protection justification defense.

### Choice of Evils Justification Defense

Our decision with respect to the self–protection justification defense makes it unnecessary to decide whether the State failed its burden of proving facts negativing William's choice of evils justification defense. Therefore, we decline to discuss it.

### CONCLUSION

Accordingly, we reverse the family court's October 23, 1991 judgment convicting defendant William E. Straub of abuse of family and household members, HRS § 709–906.

*Michael J. Rasch*, Deputy Public Defender, on the briefs, for defendant–appellant.

*James H. S. Choi*, Deputy Prosecuting Attorney, on the brief, for plaintiff–appellee.