886 P.2d 766

**STATE of Hawaiʻi, Plaintiff–Appellee,**

**v.**

**Ruben B. LUBONG, Defendant–Appellant.**

**No. 16596.**

Intermediate Court of Appeals of Hawaiʻi.

Dec. 27, 1994.

Amie L. Thompson, Deputy Public Defender, on the brief, Honolulu, for defendant-appellant.

James M. Anderson, Deputy Prosecuting Atty., City and County of Honolulu, on the brief, Honolulu, for plaintiff-appellee.

Before BURNS, C.J., and WATANABE and ACOBA, JJ.

WATANABE, Judge.

The sole issue presented by this appeal is whether the State sustained its burden of proving, beyond a reasonable doubt, that Defendant Ruben B. Lubong (Defendant) did not act in self-protection when he stabbed two co-workers.

We answer in the affirmative and accordingly affirm Defendant's conviction.

## BACKGROUND

Following an April 22, 1992 incident (Incident) in which Defendant stabbed both Clarence Mandawoub (Mandawoub) and Anthony Friday (Friday), Defendant was charged with two counts of Assault in the Third Degree, a violation of Hawai'i Revised Statutes (HRS) § 707–712(1)(a) (1985). Defendant did not testify at his jury-waived trial. Therefore, the only evidence about the details of the Incident was provided by Mandawoub and Friday.

According to the undisputed testimony, Defendant, Mandawoub, and Friday were co-workers at Malolo Beverages and Supplies. However, neither Mandawoub nor Friday was fond of Defendant. Friday suspected Defendant of having slashed the tires of his car. Mandawoub was "mad" at Defendant for having treated him unfairly at work and had had a heated argument with Defendant the night before the Incident concerning a disagreement "on the route, the runs." Transcript (Tr.) 6/29/92 at 8, 18. At about 6:00 p.m. on the day following their argument, Mandawoub was counting cash and doing paperwork in the dispatcher's office at work when Defendant, who had been outside drinking, entered the office. Defendant called Mandawoub an "asshole," yelled and pointed his finger angrily at Mandawoub for about four seconds, then left the office. *Id.* at 26.

At this point, Mandawoub, in his own words, "flew off the handle." *Id.* at 10. He followed Defendant to the warehouse area, into a space about three feet wide and twelve feet long and enclosed by a desk and a rack. He then punched Defendant in the face with a closed fist. When Defendant responded by moving toward him, Mandawoub kicked Defendant, either in the groin or on Defendant's side. Defendant then reached behind his back and grabbed a knife.

According to Mandawoub, Defendant "lunged" at him with the knife from less than two or three feet away and "tried to stab me, I guess." *Id.* at 11–12. Stunned, Mandawoub backed away. Just as Defendant was wielding his knife towards Mandawoub, Friday entered the room. Friday testified that when he came upon the scene, Mandawoub was backing up, while Defendant was holding the knife in the air and advancing toward Mandawoub. Friday immediately approached Defendant from behind and grabbed Defendant's right hand, which held the knife, just as the knife was about to hit Mandawoub's chest. *Id.* at 27–28, 34. He then "grabbed behind [Defendant's] head and swung him." *Id.* at 28–29. In the ensuing struggle, Defendant slashed Friday's right calf, causing it to bleed. Seeing the blood, Mandawoub jumped into the melee and also attempted to disarm Defendant. Mandawoub's left wrist was stabbed in the process, resulting in a three-fourths-inch laceration which required two stitches to repair. Friday's injury, which was more serious because muscle was punctured, required "eleven [stitches] on the outside, and two on the inside." *Id.* at 30.

Defendant was later arrested and charged with two counts of Assault in the Third Degree. His defense at trial was that he had acted in self-protection. Defendant adduced evidence that both Mandawoub and Friday were much taller and larger than he,[1] and both were angry at him. Furthermore, Mandawoub initiated the physical confrontation and never gave any indication that his attack on Defendant would stop. Defendant therefore argued that he was justified in acting to protect himself when he showed Mandawoub his knife. Moreover, when Friday jumped into the fray, Defendant claimed that he was justified in using deadly force to protect himself from the combined unlawful force of Mandawoub and Friday.

Defendant was nevertheless convicted as charged with respect to Friday. However, with respect to Mandawoub, the trial court convicted Defendant of the lesser-included offense of mutual affray. This timely appeal followed.

## DISCUSSION

### A.

*The Defense of Self–Protection, Generally*

The defense of self-protection is governed by HRS § 703–304 (1985), which provides, in relevant part, as follows:

**Use of force in self-protection.** (1) Subject to the provisions of this section and of section 703–308, the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

(2) The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.

(3) Except as otherwise provided in subsections (4) and (5) of this section, a person

employing protective force may estimate the necessity thereof under the circumstances as he believes them to be when the force is used without retreating, surrendering possession, doing any other act which he has no legal duty to do, or abstaining from any lawful action.

\* \* \* \* \* \*

(5) The use of deadly force is not justifiable under this section if:

\* \* \* \* \* \*

(b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating ...

Since self-protection is not designated as an affirmative defense by the Hawai'i Penal Code or any other statute, a defendant who comes forward with some credible evidence of facts constituting the defense is, pursuant to HRS § 701–115(2)(a) (1985), "entitled to an acquittal if the trier of fact finds that the evidence, when considered in the light of any contrary prosecution evidence, raises a reasonable doubt as to the defendant's guilt[.]" Moreover, once the issue of self-protection is raised, the burden is on the prosecution to disprove the facts that have been introduced or to prove facts negativing the defense and to do so beyond a reasonable doubt. *State v. McNulty,* 60 Haw. 259, 262, 588 P.2d 438, 442 (1978); *State v. Straub,* 9 Haw.App. 435, 444, 843 P.2d 1389, 1393 (1993).

In this case, the trial court rejected Defendant's claim of self-protection, explaining its ruling as follows:

[Mandawoub] did indicate that he struck [Defendant] first and that he was, in his own words, "off the handle."

But the evidence is also not contradicted in any way that [Defendant] after that charged towards [Mandawoub] with his knife.

As for [Friday], the testimony is that [Friday] was simply trying to take the knife away and ended up getting stabbed

---

1. Mandawoub testified that he was 5'9" and weighed 210 pounds. He also testified that he was taller and larger than Defendant, and had a longer arm reach than Defendant. Friday testified that he was almost 6'4" tall, "way taller" than Defendant, and weighed 220 pounds at the time of trial.

in a scuffle after that. At the very least these injuries were reckless.

Even if there is just too much, you can't retaliate even if you felt that you have been done wrong. [Defendant], you can't charge a guy with a knife. You can't do it. It is not justified under these circumstances.

The evidence that I have before me was that, yes [Mandawoub] hit you. He shouldn't have done it. That in itself was an assault but once that's done you can't charge him with a knife. You can't even the score.

I don't have any evidence before me that they were threatening at the point that he cut them. This could have been charged at a higher level but I am going to find beyond a reasonable doubt that [Defendant] did intentionally, knowingly, or recklessly caused [sic] bodily injury to both [Mandawoub] and to [Friday].

Tr. 6/30/92 at 6–7.

Defendant contends that the trial court's failure to acquit him constituted error because the State's evidence was insufficient to negative his claim of self-protection. Defendant points out that: (1) he reasonably believed that it was necessary for him to use force to protect himself from further harm; (2) the amount of force he used was not deadly; and (3) even if he did use deadly force, such force was reasonable under the circumstances.

 In reviewing the legal sufficiency of the evidence on appeal, however, the test is whether, viewing the evidence in the light most favorable to the State, substantial evidence exists to support the conclusion of the trier of fact. *State v. Silva*, 75 Haw. 419, 432, 864 P.2d 583, 589–90 (1993). "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to reach a conclusion. *Id.* In reviewing whether substantial evidence exists to support a conviction, moreover, due deference must be given to the right of the trier of fact to determine credibility, weigh the evidence, and draw reasonable inferences from the evidence adduced. *State v. Naeole*, 62 Haw. 563, 565, 617 P.2d 820, 823 (1980).

Evaluated according to the foregoing standard, there is clearly substantial evidence to support the trial court's conclusion that Defendant's use of force on the occasion in question was not justified.

### B.

### *Deadly or Non–Deadly Force*

For purposes of interpreting the self-protection justification statute, HRS § 703–300 (Supp.1992) defines "force" as any "bodily impact, restraint, or confinement, or the threat thereof." Furthermore, "deadly force" is defined as:

force which the actor uses with the intent of causing or which he knows to create a substantial risk of causing death or serious bodily harm. Intentionally firing a firearm in the direction of another person or in the direction which another person is believed to be constitutes deadly force. *A threat to cause death or serious bodily injury, by the production of a weapon or otherwise, so long as the actor's intent is limited to creating an apprehension that he will use deadly force if necessary, does not constitute deadly force.*

*Id.* (emphasis added).

Defendant claims that when he took out his knife in response to Mandawoub's assault, he did so only to create an apprehension that he would use deadly force if necessary. Relying on *State v. Realina*, 1 Haw.App. 167, 616 P.2d 229 (1980), in which this court held that waving a machete from thirty yards away constituted a mere threat, rather than deadly force, Defendant argues that his use of the knife in the instant case similarly did not amount to deadly force. We disagree.

 The uncontradicted testimony in this case was that Defendant charged at Mandawoub with the knife. Furthermore, Mandawoub was attempting to retreat when Defendant wielded the knife and advanced towards Mandawoub.

The substantial evidence of record thus supports the trial court's finding that Defendant's use of the knife constituted deadly force.

### C.

*Reasonable Belief of the Necessity for Deadly Force*

Pursuant to HRS § 703–304(2), the use of deadly force is justifiable, for self-protection purposes, only "if the actor believes that deadly force is necessary to protect himself [or herself] against death, serious bodily injury, kidnapping, rape, or forcible sodomy." HRS § 703–300 defines "believes" as "reasonably believes." [2]

■ In evaluating the reasonableness of a defendant's belief that deadly force was necessary for self-protection, the evidence must be assessed from the standpoint of a reasonable person in the defendant's position under the circumstances as the defendant subjectively believed them to be at the time he or she tried to defend himself or herself. *State v. Pemberton*, 71 Haw. 466, 477, 796 P.2d 80, 85 (1990). The test for assessing a defendant's self-protection defense thus involves two prongs.

■ The first prong is subjective; it requires a determination of whether the defendant had the requisite belief that deadly force was necessary to avert death, serious bodily injury, kidnapping, rape, or forcible sodomy. The factfinder is required to place itself in the shoes of the defendant, determine the point of view which the defendant had at the time of the incident, and "view the conduct of the [victim] with all its pertinent sidelights as the [defendant] was warranted in viewing it." *State v. Janes*, 121 Wash.2d 220, 238, 850 P.2d 495, 504 (1993) (quoting *State v. Tribett*, 74 Wash. 125, 130, 132 P. 875 (1913)). Evaluating the evidence from a subjective point of view ensures that the factfinder "fully understands the totality of the defendant's actions from the defendant's own perspective." *Id.* at 239, 850 P.2d at 505.

If the State does not prove beyond a reasonable doubt that the defendant did not have the requisite belief that deadly force was necessary, the factfinder must then proceed to the second prong of the test. *People v. Goetz*, 68 N.Y.2d 96, 114, 506 N.Y.S.2d 18, 29, 497 N.E.2d 41, 52 (1986). This prong is objective; it requires a determination of whether a reasonably prudent person in the same situation as the defendant would have believed that deadly force was necessary for self-protection. *Id.* Evaluating the evidence objectively "serves the crucial function of providing an external standard. Without it, [the factfinder] would be forced to evaluate the defendant's actions in the vacuum of the defendant's own subjective perceptions." *Janes*, 121 Wash.2d at 239, 850 P.2d at 505. It would also "give free rein to the short-tempered, the pugnacious, and the fool-hardy who see threats of harm where the rest of us would not and who blind themselves to opportunities for escape that seem plainly available." *Id.* at 240, 850 P.2d at 505 (quoting Susan Estrich, *Defending Women*, 88 Mich. L.Rev. 1430, 1435 (1990)).

Since Defendant did not testify in this case, it is impossible to determine what his subjective belief was during the Incident. However, evidence was adduced as to the physical attributes of Mandawoub and Friday and about their dislike for Defendant. Furthermore, it was undisputed that Mandawoub punched and kicked Defendant first, and that during the Incident, both Mandawoub and Friday jumped into the fight against Defendant. We will therefore assume, for purposes of this opinion, that Defendant subjectively believed that he was required to use some force to protect himself from serious bodily injury during the Incident.

---

**2.** The Model Penal Code, upon which Hawai'i's Penal Code is based, omits any requirement of reasonableness in its provisions on the use of force for self-protection purposes. The Hawai'i Legislature, however, in Hawai'i Revised Statutes (HRS) § 703–300 (Supp.1992), defined "believes" to mean "reasonably believes." In doing so, the Conference Committee explained as follows:

The definition adopts "the reasonable man standard with respect to justification for the use of force in self-protection, in the protection of property, and in the protection of others. It is your Committee's finding that the requirement that a person's belief be "reasonable" for these defenses to be available will provide an objective basis by which to gauge whether or not the use of force was justified."
Supplemental Commentary on HRS § 703–300 (1985) (quoting Conference Committee Report No. 2 (1972)).

■ Based on our review of the record, however, we conclude that a reasonable person in the same situation would not have believed that it was necessary to use deadly force on the particular occasion. The undisputed evidence in the record indicates that Mandawoub retreated when Defendant took out his knife. Defendant nevertheless proceeded to pursue Mandawoub with the knife and was about to stab Mandawoub in the chest when Friday interceded. Furthermore, when Friday entered the room and tried to disarm Defendant, Defendant used the knife to slash at Friday. When Mandawoub re-entered the fray in an effort to also disarm Defendant, he, too, was stabbed. There is thus substantial evidence to support the trial court's conclusion that a reasonable person would not have believed that it was necessary to use deadly force on the particular occasion.

Affirmed.