**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000356
29-JUL-2022
07:58 AM
Dkt. 45 SO**

NO. CAAP-21-0000356

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee, v.
KATRINA AKINA, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
(NORTH & SOUTH KONA DIVISION)
(CASE NO. 3DCW-20-0002944)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendant-Appellant Katrina M. Akina (**Akina**) appeals from the May 24, 2021 Judgment and Notice of Entry of Judgment (**Judgment**) entered in the District Court of the Third Circuit, Kona Division (**District Court**),[1] convicting her of Assault in the Third Degree (**Assault 3**), in violation of Hawaii Revised Statutes (**HRS**) § 707-712(1)(a), (2) (2014).[2]

---

[1]  The Honorable Cynthia T. Tai presided.

[2]  HRS § 707-712(1)(a), (2) (2014) provides:

> (1) A person commits the offense of assault in the third degree if the person:
> (a)  Intentionally, knowingly, or recklessly causes bodily injury to another person[.]
>
> . . . .

(continued...)

Akina raises four points of error on appeal, contending that: (1) the Amended Complaint (**Complaint**) failed to charge an offense; (2) the District Court improperly based its assessment of Akina's credibility on her status as a defendant; (3) there is no substantial evidence to support the conviction, because any force Akina used was in self-defense; and (4) the District Court failed to properly advise Akina of her right not to testify and the implications of waiving that right during its Tachibana colloquy.[3]

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Akina's points of error as follows:

(1) Akina argues that the charge in the Complaint of Assault 3, via mutual affray, pursuant to HRS § 707-712(1)(a) and (2), fails to state an offense, and Akina's conviction based on that defective charge should be reversed.

"[C]onvictions based upon a defective charge will be deemed valid unless the defendant proves that either the complaint cannot be reasonably interpreted to charge a crime or he or she was prejudiced by the omission." State v. Sprattling, 99 Hawaiʻi 312, 318, 55 P.3d 276, 282 (2002).

---

[2] (...continued)
    (2) Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

[3]    Tachibana v. State, 79 Hawaiʻi 226, 900 P.2d 1293 (1995).

The Complaint states, in relevant part:  "On or about . . . October [17], 2020, in [Hawaiʻi] County . . ., [Akina] while in a fight or scuffle entered into by mutual consent, did intentionally, knowingly or recklessly cause bodily injury to another person, [the complaining witness (**CW**)], thereby committing [Assault 3]."

We conclude that the Complaint states all the elements of Assault 3, as set forth in HRS § 707-712(1)(a), as well as the mitigating defense in HRS § 707-712(2).  The charge is not rendered defective where it sufficiently "apprises the defendant" of the offense, see State v. Merino, 81 Hawaiʻi 198, 212, 915 P.2d 672, 686 (1996), but also acknowledges that a mitigating defense applies.  The State's concession of the mitigating defense benefits Akina; thus, there is no prejudice by including it in the charge.  Sprattling, 99 Hawaiʻi at 318, 55 P.3d at 282. Akina's first point of error is without merit.

(2)  Akina argues that the District Court improperly found her to be not credible due to her interest in the case as the defendant in this criminal matter.  On May 24, 2021, the District Court found Akina guilty of Assault 3 and stated its findings, including:

> THE COURT:  Now Miss Akina's case relies heavily on a July incident and posts that were placed on Facebook.  In this Court's mind, **looking at the credibility of both Miss Akina and [CW],** I think that what the posts establish is that both [CW] and Miss Akina do not care for one another at all.  So it establishes at least to the Court that there was essentially bad blood between the two[.]
>
> . . . .

> Now with respect to Miss Akina's testimony as well as [CW]'s testimony, **the Court** finds that Miss Akina's version of events is different from [CW]'s and [Akina's ex-boyfriend, who was in a relationship with [CW] at the time of the incident], as well as the [post-incident] observations of Officer Chaves and therefore **gives less weight to Miss Akina's testimony,** *especially* **in light of the fact that she has an interest in the outcome of the case**.

(Emphasis added).

In the context of prosecutorial misconduct, the Hawaiʻi Supreme Court has explained, *sua sponte*:

> [I]mportantly, **the implication** of the prosecutor's argument, whether intended or not, **was that [Basham] had no reason to tell the truth because he was a defendant in the case**. At that point in the closing argument, the prosecutor had not discussed any of the testimony that had been presented during trial. The prosecutor also offered **no reason, based on the evidence, that [Basham] would have no reason to tell the truth, other than [Basham's] status as a defendant**.
>
> Defense counsel strongly objected to the prosecutor's statement, arguing in response that he took the prosecutor's comment to mean "you should not believe [Basham] because he's a defendant in the case."
>
> **A suggestion that defendants have no reason to tell the truth impinges upon fundamental principles of our system of justice, including the presumption of innocence, the burden of proof upon the government, the right to testify without penalty, and the right to a fair trial with an unbiased [trier-of-fact]**.

State v. Basham, 132 Hawaiʻi 97, 115-16, 319 P.3d 1105, 1123-24 (2014) (emphasis added, footnote omitted).[4]

---

[4] As recounted by the supreme court in Basham:

> The prosecutor in this case opened his closing argument by stating that the only critical issue in the case was that of witness credibility. The prosecutor continued, "On behalf of the prosecution, I adamantly state to you, that [the other witnesses] have been completely credible witnesses, that they are worthy of your belief." Immediately after communicating this unqualified endorsement of [the other witnesses], the prosecutor compared them to [Basham]. The prosecutor argued that "[w]hen a defendant testifies, his credibility is to be weighed as any other
> (continued...)

This court, the Intermediate Court of Appeals (**ICA**), later tried to discern the extent to which Basham overruled prior supreme court case law, asking:

> Did the Basham majority intend only to prevent the prosecutor from arguing that a defendant has a motive to lie due to his or her interest in the outcome of the case, or *did the Basham majority intend a broader holding that it is improper for the [trier-of-fact] to consider the defendant's interest in the outcome of the case in assessing the defendant's credibility*? Each interpretation is problematic.
>
> A person's self-interest is widely recognized as a relevant factor to consider in evaluating the person's credibility. The precept that people are inclined to act in ways that further their own interests is reflected in Hawaiʻi Rules of Evidence [(**HRE**)] Rule 609.1 (2016), which establishes the general rule that "[t]he credibility of a witness may be attacked by evidence of bias, interest, or motive. It is also reflected in judicial precedent which holds that '[b]ias, interest, or motive is always relevant[.]'" State v. Estrada, 69 Haw. 204, 220, 738 P.2d 812, 823 (1987). Precluding the jury from considering a defendant's interest in the outcome or result of the case in evaluating the defendant's credibility will require the jury to ignore a factor that is "always relevant" in evaluating credibility. It would therefore impair and impede the truth-seeking purpose of the criminal justice system.
>
> **On the other hand, if the [finder-of-fact] can consider the defendant's interest in the outcome of the case as a relevant factor in evaluating the defendant's credibility, it is unclear why a prosecutor should be precluded from arguing this factor.**
>
> In choosing between these alternative interpretations of Basham, we note that the Basham majority focused on the role of the prosecutor in its analysis, prefacing its holding with the phrase, "Given the prosecutor's important role in our justice system. . . ." Basham, 132 Hawaiʻi at 118, 319 P.3d at 1126. Indeed, the specific holding of Basham is that "it is improper for a prosecutor in summation to make generic arguments regarding credibility based solely upon the status of the defendant" and that "a prosecutor may not argue during closing argument that defendants, because they are defendants, have no reason to tell the truth or have the greatest motive to lie." [citation] Furthermore, Basham did not address whether it was permissible for the jury to consider the defendant's interest in the outcome of

---

[4] (...continued)
witness," but "you need to keep . . . in mind" that [Basham] has "no reason to tell you the truth."

Basham, 132 Hawaiʻi at 115, 319 P.3d at 1123.

5

> the case in assessing the defendant's credibility. Basham also did not specifically overrule the Apilando court's conclusion that "when a defendant takes the stand to testify, his or her credibility can be tested in the same manner as any other witness." [State v. Apilando, 79 Hawaiʻi 128, 142, 900 P.2d 135, 149 (1995).]
>
> For these reasons, we conclude that Basham should be read narrowly to only preclude the prosecutor from making the generic argument regarding the defendant's interest in the outcome of the case, and not to prevent the jury from considering the defendant's interest in the outcome of the case in evaluating his or her credibility. Interpreting Basham in this manner, we conclude that the prosecutor's Basham error was harmless and did not prejudice Magbulos' right to a fair trial.

State v. Magbulos, 141 Hawaiʻi 483, 497, 413 P.3d 387, 401 (App. 2018) (footnote omitted; emphasis altered), disapproved of by State v. Austin, 143 Hawaiʻi 18, 56, 422 P.3d 18, 56 (2018).

A few months after Magbulos was decided, the supreme court issued a multi-opinioned decision in Austin. 143 Hawaiʻi at 18, 422 P.3d at 18. Although the supreme court agreed on a number of issues, the divisions concerned (1) whether a prosecutor could ever properly argue to a jury that the defendant lied to the jury - the majority held, in essence, "don't say lied" – and (2) whether there were grounds to vacate the conviction - with a majority concluding that there were not sufficient grounds to vacate the conviction. Id. at 55-56, 422 P.3d at 55-56. In explicating its reasoning as to the don't-say-lied issue, in a footnote, the majority (on that issue) took the opportunity to express its disapproval of the ICA's "misapprehen[sion] and mischaracteriz[ation]" of Basham in Magbulos. Id. at 56 n.12, 422 P.3d at 56 n.12. The footnote stated:

6

We have previously held that it is also improper for a prosecutor to argue to a jury that a defendant is lying based solely on the fact that he or she is a defendant. See State v. Basham, 132 Hawaiʻi 97, 116, 319 P.3d 1105, 1124 (2014). Such generic arguments call upon the jury to assume that a defendant is motivated to lie to avoid punishment. Because such an argument can be asserted indiscriminately as to any defendant, regardless of the evidence, it is completely unhelpful to the finder of fact. Moreover, **arguing that the testimony of defendants should inherently be doubted contradicts the presumption of innocence — a foundation of our criminal justice system. That is, a contention that defendants are inherently motivated to lie effectively places the burden on defendants to prove they are testifying truthfully, which also has a chilling effect on the constitutional right to testify**. We therefore reaffirm our decision in Basham and specifically note that it overrules any prior precedents to the extent they are in conflict, and we express our disapproval of those portions of the [ICA's] recent opinion in State v. Magbulos that misapprehend and mischaracterize our holding in Basham. See 141 Hawaiʻi 483, 495-98, 413 P.3d 387, 399-402 (App. 2018) (arguing, inter alia, that [Basham] is contrary to the rule that defendants may be impeached in the same manner as other witnesses). Our holding today, which prohibits a prosecutor from referring to a defendant's testimony as a lie, will have the additional benefit of discouraging improper generic arguments regarding a defendant's credibility and of encouraging prosecutors to "make only those arguments that are consistent with the trier's duty to decide the case on the evidence." ABA Prosecution Function Standard 3-6.8(c).

We also reject any implication in Magbulos that an appellate court does not have the duty to rectify a prosecutor's improper arguments that prejudice a defendant simply because "[n]o trial is perfect." 141 Hawaiʻi at 492, 413 P.3d at 396. **All appellate courts have a responsibility to ensure the fundamental fairness of the criminal proceedings they review**, including appropriate consideration of opening statements and closing arguments that risk depriving a defendant of a fair trial. See State v. Rogan, 91 Hawaiʻi 405, 416, 984 P.2d 1231, 1242 (1999).

Id. (emphasis added).

For various reasons, this footnote is not controlling authority with respect to Akina's argument that the District Court improperly found her to be not credible "especially" due to her interest in the case as the defendant, but it nevertheless states and otherwise implicates bedrock principles that must be considered here. To wit, in our criminal justice system, a defendant is presumed to be innocent, and the prosecution bears

7

the burden of proof beyond a reasonable doubt. <u>See</u> <u>id.</u>  The notion that "defendants are inherently motivated to lie effectively places the burden on defendants to prove they are testifying truthfully[.]"  <u>Id.</u>  Such a burden has a chilling effect on a defendant's fundamental constitutional right to testify.  <u>Id.</u>  The trier-of-fact has a duty to decide a case on the evidence, consistent with these principles.  <u>Id.</u>  This court has a responsibility to ensure the fundamental fairness of the criminal proceedings that we review.  <u>Id.</u>

In a subsequent opinion, concerning an assertion of prosecutorial misconduct, the supreme court reiterated its rejection of the <u>Magbulos</u> analysis regarding <u>Basham</u> and held that a generic reference to every defendant's interest in the outcome of the case is an improper attack on the defendant's credibility based solely on the defendant's status as a defendant.  <u>State v. Salavea</u>, 147 Hawaiʻi 564, 585, 465 P.3d 1011, 1032 (2020).  In a footnote discussing a standard jury instruction that a jury may consider a witness's interest in the result of the case when evaluating witness credibility and the weight of the evidence, the supreme court stated:

> Our holding in <u>Basham</u>, however, does not preclude the prosecution from arguing that the evidence adduced at trial shows the defendant has a particularized, non-generic interest in the outcome that affects the credibility of the defendant's testimony.  <u>Basham</u> simply prohibits the prosecution from making "generic arguments regarding a defendant's credibility," i.e., arguments that are uncoupled from evidence showing the defendant has a particular interest in the outcome separate from the generic interest shared by all defendants in criminal cases.

<u>Id.</u> at 585 n.29, 465 P.3d at 1032 n.29.

8

While Salavea does not directly answer the question presented in this case, it highlights the distinction between evidence of a defendant's particularized, non-generic interest that may be affected by the outcome of a case – which can be properly argued by the prosecution and considered by the trier-of-fact – and the generic interest shared by all defendants in all cases. The supreme court held that such generic arguments, uncoupled from evidence of a defendant's particularized interest, constituted prosecutorial misconduct. Id. at 585, 465 P.3d at 1032.

Here, the District Court's decision rested heavily on its determination of the credibility of Akina's testimony versus the credibility of CW and Akina's ex-boyfriend, who was in a relationship with CW. The District Court gave less weight to Akina's testimony "especially in light of the fact that she has an interest in the outcome of the case." The court identified no interest in the case separate from Akina's generic interest in the outcome that is shared by all criminal defendants. In light of the cases discussed above, and based on the circumstances of this case, we hold that the District Court's "especial" reliance on Akina's generic, non-specific interest in the outcome of this case – uncoupled from any evidence showing Akina had a separate, particular interest in the outcome separate from the generic interest shared by all defendants in criminal cases – in determining that Akina's testimony was less credible, and therefore entitled to less weight, violated Akina's fundamental

9

fair trial rights. Given the nature and scope of the evidence in this case, we cannot conclude that the District Court's error in this regard was harmless beyond a reasonable doubt. Therefore, the Judgment must be vacated.

(3) Akina argues the State failed to disprove her justification of self-defense. To establish a self-defense claim, the defendant must present credible evidence of facts constituting the defense, and the burden then shifts to the prosecution to disprove the defense beyond a reasonable doubt. State v. Lubong, 77 Hawaiʻi 429, 431, 886 P.2d 766, 768 (App. 1994). The test for self-defense "involves a two-step analysis; a determination that the defendant held a subjective belief that the force was necessary and that the subjective belief was objectively reasonable." State v. Kawelo, CAAP-14-0001146. 2015 WL 7421396, at *2 (Haw. App. Nov. 20, 2015) (SDO).

Even assuming, *arguendo*, that Akina justifiably bit CW in self-defense, viewing the evidence in the light most favorable to the prosecution, the State brought forward evidence that could be viewed as disproving that Akina was justified in scratching CW's face, as the testimony indicates this occurred not in the midst of the mutual affray, but as the fight was ending. Akina testified: "Evan told me to let go so I ended up, you know, pushing her face. I remember scratching her, pushing her face away from me. Finally let her go. Pushed her away. She ran into the house." While by no means overwhelming evidence, there was substantial evidence to support a conclusion that Akina did

10

not subjectively believe that scratching CW's face was immediately necessary to protect herself (Akina) from unlawful force,[5] and/or that an objectively reasonable person would not deem it necessary for self-defense.

(4) Akina contends the District Court failed to engage her in a proper <u>Tachibana</u> colloquy, and that it cannot be concluded that she knowingly, intelligently, and voluntarily waived her right not to testify. Akina argues that the District Court's colloquies were defective in two ways.

First, Akina contends that the colloquy given at the start of trial was rendered constitutionally infirm because the District Court said: "Now you have a constitutional right not to testify and <u>to remain silent</u>." (Emphasis added). Akina correctly points out that the right at issue here is the right not to testify, not the right to remain silent, which is commonly understood to be a <u>Miranda</u> warning.[6]

In <u>State v. Han</u>, 130 Hawaiʻi 83, 93, 306 P.3d 128, 138 (2013), the supreme court stated that the phrase "right to remain silent" did not satisfy <u>Tachibana</u>:

> Finally, the court should advise a defendant that he or she has the right not to testify. <u>Tachibana</u>, 79 Hawaiʻi at 235, 900 P.2d at 1303. Here, the court told Petitioner that he had "the constitutional right to remain silent[,]" and said nothing about the right not to testify. However, for a defendant, "remaining silent" could mean something

---

[5]    HRS § 703-304(1) (2014) provides, in relevant part: "[T]he use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion."

[6]    <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

11

> other than "not testifying," since the phrase "right to
> remain silent" popularly invokes the familiar Miranda
> warnings.  As Chief Justice Rehnquist noted in his opinion
> in <u>Dickerson v. United States</u>, "<u>[Miranda]</u> has become
> embedded in routine police practice to a point where the
> warnings have become part of our national culture."  530
> U.S. 428, 430, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000).  <u>A
> defendant could be confused if a court states simply, "you
> have the right to remain silent"</u> **without using the
> accompanying phrase, "you have the right not to testify**."

<u>Han</u>, 130 Hawaiʻi at 93 n.8, 305 P.3d at 138 n.8 (emphasis

altered).

Thus, <u>Han</u> supports a conclusion that an advisement that

includes the right to remain silent is not necessarily defective,

so long as the defendant is also advised that he or she has a

right not to testify.  Akina cites no authority to the contrary.

Therefore, we decline to conclude that the District Court's

colloquy was deficient on that basis alone.

Akina further argues that the District Court only

advised her that no one could *prevent* her from testifying if she

wanted to do so, but failed to advise her that no one could *force*

her to testify if she did not want to.  In reviewing whether

various colloquies passed constitutional muster, the supreme

court has emphasized that the right not to testify is equally as

protected as the right to testify, and that trial courts must

engage in a colloquy with the defendant when he or she chooses to

testify, to ensure that the waiver of the right not to testify is

knowing, intelligent, and voluntary.  <u>See</u> <u>State v. Martin</u>, 146

Hawaiʻi 365, 378-79, 463 P.3d 1022, 1035-36 (2020); <u>State v.

Torres</u>, 144 Hawaiʻi 282, 294, 439 P.3d 234, 246 (2019).

After the State rested its case, the District Court administered its final, colloquy as follows:

> [PROSECUTOR]:  . . . State rests.
>
> THE COURT:  Okay.  Mr. Sylva [(defense counsel)], your witness?
>
> MR. SYLVA:  We would only present one possible witness, Your Honor, which would be Miss Akina.  I think prior the Court may want to do the --
>
> THE COURT:  Do the colloquy to discuss whether or not she would like to testify; correct?
>
> MR. SYLVA:  Yes, Your Honor.
>
> THE COURT:  Okay.
> So, Miss Akina, as discussed with you at the beginning when you walked into the room we discussed your Constitutional right to testify in your own defense; right?
>
> [AKINA]:  Yes.
>
> THE COURT:  You remember that?
>
> [AKINA]:  Yes, Your Honor.
>
> THE COURT:  And I stated that this was your decision and your decision alone to make; correct?
>
> [AKINA]:  That's right.
>
> THE COURT:  And while you are free to speak to Mr. Silva [sic]about this decision, you must understand that this is something that you must decide --
>
> [AKINA]:  Yes.
>
> THE COURT:  -- and agree to.  Not your lawyer.
>
> [AKINA]:  Yes.
>
> THE COURT:  Okay.  If you decide to testify the Prosecutor will be allowed to cross-examine you.
>
> [AKINA]:  Yes.
>
> THE COURT:  Now you have a Constitutional right not to testify and to remain silent.  And if that's the case the Court cannot hold your silence against you in deciding your case.  Okay?
> It's the understanding of the Court that you are ambivalent right now.  Do you wish to testify or not?
>
> [AKINA]:  Can I ask him?
>
> THE COURT:  You can speak to your lawyer.

13

  (Discussion between Ms. Akina and Counsel.)

  THE COURT:  Miss Akina, I need to hear from you with your words --

  [AKINA]:  Oh, yes.  Yes, Your Honor, I would like to testify.

  THE COURT:  Okay.  Very well.  Please take the stand.

In <u>Torres</u>, the supreme court explained, *inter alia*:

  This court's case law clearly demonstrates that when a defendant waives a fundamental right, there must be an affirmative, on-the-record showing that the waiver of the right is voluntary.  It is thus incumbent on the trial court to have a basis to conclude that a waiver is voluntary.  Unless voluntariness is gleaned from the defendant's responses, the trial court must inquire into the voluntariness of the waiver.  Accordingly, a direct question about voluntariness is required when the defendant's statements in the colloquy do not indicate that the decision to waive a [fundamental right] is the defendant's own free and deliberate choice.

<u>Torres</u>, 144 Hawaiʻi at 289-90, 439 P.3d at 241-42 (citation omitted).

  With respect to the right not to testify, the supreme court held:

  A defendant in a criminal case "has an absolute right not to testify."  <u>Salinas v. Texas</u>, 570 U.S. 178, 184 (2013).  In Hawaiʻi, the right not to testify has been recognized since as early as the nineteenth century.  <u>See</u> <u>The King v. McGiffin</u>, 7 Haw. 104, 113 (Haw. Kingdom 1887) (holding that a comment by the prosecution about the defendant's failure to testify was "highly improper, and contrary to the statute" although not prejudicial in the particular case).

  This right is explicitly guaranteed by the United States Constitution under the Fifth and Fourteenth Amendments and by the Hawaiʻi Constitution under article I, section 10.  <u>Monteil</u>, 134 Hawaiʻi at 369, 341 P.3d at 575.  The Fifth Amendment's protection is "fulfilled only when an accused is guaranteed **the right to remain silent** unless he chooses to speak in the unfettered exercise of his own will.  The choice of whether to testify in one's own defense is an exercise of the constitutional privilege."  <u>Rock v. Arkansas</u>, 483 U.S. 44, 53 (1987).  Additionally, the Fourteenth Amendment to the United States Constitution secures "the right of a criminal defendant to choose between silence and testifying [o]n his own behalf."  <u>Ferguson v. Georgia</u>, 365 U.S. 570, 602 (1961) (Clark, J., concurring); <u>see</u> <u>also</u> <u>Harris</u>, 401 U.S. at 225 ("Every criminal defendant

is privileged to testify in his own defense, or to refuse to do so.").

Under our current procedures, however, the right not to testify does not receive protection equivalent to the corresponding right to testify in one's own defense--a foundational constitutional right of equivalent stature. That is, one fundamental right (the right to testify) is more greatly protected than the equally fundamental parallel right (the right not to testify).

As discussed, we held in Lewis that courts must advise a defendant prior to the start of trial of both the right to testify and the right not to testify. 94 Hawaiʻi at 297, 12 P.3d at 1238. This advisement supplements the "ultimate colloquy" regarding the right to testify that we held in Tachibana must be given at the close of the defendant's case if the defendant has not testified. 79 Hawaiʻi at 237 n.9, 900 P.2d at 1304 n.9. Yet we have thus far declined to require trial courts to engage the defendant in a corresponding colloquy regarding the right not to testify when a defendant elects to take the stand. See Lewis, 94 Hawaiʻi at 295-96, 12 P.3d at 1236-37. In other words, we have required courts to confirm that a defendant's waiver of the right to testify is knowing, intelligent, and voluntary, but we have not required a similar confirmation regarding a defendant's waiver of the fundamental right not to testify.

This disparate treatment makes it easier for a defendant in a criminal case to waive the right not to testify than to waive the right to testify because there is no "ultimate colloquy" from the court regarding the right not to testify and its consequences. By contrast, when a defendant waives the right to testify, the defendant must make an on-the-record, affirmative choice by answering questions from the court confirming such a decision. This case demonstrates why the right not to testify deserves protection that is equal to that of the right to testify.

In Tachibana, this court recognized that there was a necessary balance between the right to testify and the right not to testify. 79 Hawaiʻi at 235, 900 P.2d at 1302. We noted the risk that advising the defendant of the right to testify could influence the defendant's decision on whether to waive the right not to testify, which was a "constitutionally explicit and more fragile right." Id. (quoting United States v. Martinez, 883 F.2d 750, 760 (9th Cir. 1989)). Thus, the Tachibana court advised trial courts to advise defendants of both the right to testify and the right not to testify in order to "reduce the possibility that the trial court's colloquy could have any inadvertent effect on either the defendant's right not to testify or the attorney-client relationship." Id. at 237 n.9, 900 P.2d at 1304 n.9.

This court reiterated the importance of this "even balance" between a defendant's right to testify and the right not to testify in Monteil. 134 Hawaiʻi at 370, 341 P.3d at 576. We explained that "Hawaiʻi has historically protected both the right to testify and the right not to testify." Id. at 369, 341 P.3d at 575. The danger in

15

providing an "imbalance in information" between the right to testify and the right not to testify, we explained, was that the "more fragile right" not to testify would be threatened because defendants that choose to testify would not be informed of the "relevant circumstances" of their decision from the beginning of the trial. Id. at 372, 341 P.3d at 578. Specifically, the court reasoned that the failure to advise a defendant that the exercise of the right not to testify "could not be used against him in deciding the case," undermined the purposes of the pretrial advisement: to limit post-conviction challenges and to avoid "inadvertently influenc[ing]" the defendant's decision-making process in deciding whether to testify. Id.

These repeated statements of the importance of properly balancing the constitutional right to testify with the equally important right not to testify are at odds with our current practice of not requiring a Tachibana colloquy when a defendant waives the right not to testify. The disparity is even more striking when we consider other parallel contexts in which our precedent requires trial courts to conduct an on-the-record colloquy to ensure that a waiver of a constitutional right is knowing, intelligent, and voluntary.

. . . .

Tachibana, as explained, held that the right to testify is a fundamental right and that a trial court is required to engage in an on-the-record colloquy to ensure that waiver of the right is knowing, intelligent, and voluntary. 79 Hawaiʻi at 236, 900 P.2d at 1303. Tachibana recognized that the right to testify derives partly from the right not to testify as provided by the Fifth Amendment to the United States Constitution. Id. at 231, 900 P.2d at 1298. Thus, this court held that the decision whether to testify or not testify was a decision that was required to be decided by the defendant, not by defense counsel, and that trial courts had a duty to ensure that the waiver of the right to testify was knowing, intelligent, and voluntary. See id. at 236, 900 P.2d at 1303.

. . . Like other fundamental rights, the waiver of the right not to testify should require a trial court to engage in an on-the-record colloquy with the defendant to ensure that the waiver is knowing, intelligent, and voluntary. This is necessary to protect the "constitutionally explicit and more fragile right," Tachibana, 79 Hawaiʻi at 235, 900 P.2d at 1302, that has been "historically protected" by Hawaiʻi law. Monteil, 134 Hawaiʻi at 369, 341 P.3d at 575. Additionally, adopting such an approach would be consistent with some of the important purposes of the colloquy requirement; it would protect a defendant from testifying based upon belief or advice that to do otherwise would result in an inference of guilt, it would reduce the possibility that the trial court's colloquy could "inadvertent[ly] effect" the defendant's right not to testify, and it would reduce appeals (as exemplified in this case) and post-conviction challenges based on the defendant's asserted lack of a knowing, intelligent, and voluntary waiver of the right not to testify. See Murray,

16

> 116 Hawaiʻi at 11-12, 169 P.3d at 963-64; <u>Tachibana</u>, 79
> Hawaiʻi at 236, 900 P.2d at 1303. Thus, we hold that trial
> courts are required to engage in an on-the-record colloquy
> with a defendant when the defendant chooses to testify to
> ensure that a waiver of the right not to testify is knowing,
> intelligent, and voluntary. The implication of such a
> requirement merely requires the trial court to give the
> <u>Tachibana</u> colloquy to a defendant whether or not the
> defendant elects to testify. That is, we are providing
> equal treatment to two fundamental constitutional rights
> that merit equivalent protection. This requirement will be
> effective in trials beginning after the filing date of this
> opinion.

<u>Torres</u>, 144 Hawaiʻi at 292-95, 439 P.3d at 244-47 (cleaned up; emphasis added).

Here, in its final colloquy, the District Court asked Akina, "when you walked into the room we discussed your Constitutional right to testify in your own defense; right?" and Akina said yes. The court then asked "You remember that?" but it is unclear whether the court was asking if Akina remembered having the "discussion" or if Akina remembered what those rights were. Akina again answered yes. Without further information on the right to testify, the court next moved on to, "And I stated that this was your decision and your decision alone to make; correct?" Akina responded, "That's right." The court followed with, "And while you are free to speak to Mr. Silva [sic] about this decision, you must understand that this is something that you must decide -- " Akina interrupted to say, "Yes." The court finished, "-- and agree to. Not your lawyer." Akina again said, "Yes."

The District Court then advised Akina, "If you decide to testify the Prosecutor will be allowed to cross-examine you." Although no question was posed, Akina responded, "Yes."

17

Next the court stated, "Now you have a Constitutional right not to testify and to remain silent. And if that's the case the Court cannot hold your silence against you in deciding your case. Okay?" Without waiting for a response, the court continued, "It's the understanding of the Court that you are ambivalent right now. Do you wish to testify or not?"

At this point, although the District Court had provided some important advisements concerning the right not to testify, the court had not engaged in dialogue or true colloquy establishing Akina's <u>understanding</u> of her rights. Indeed, the court received no response and made no attempt to inquire as to Akina's understanding about her right not to testify.

When faced with the question of whether she "wished" to testify or not, Akina's response did not indicate understanding, rather she said "Can I ask him?" apparently referring to her lawyer.

After Akina consulted with counsel, the court asked no questions, instead telling Akina, "I need to hear from you with your words - [.]" While Akina's response clearly stated that she "would like to testify," in light of the court's recognition of Akina's ambivalence, and Akina's request to ask her lawyer in response to the court's questioning if she wished to testify or not, it is unclear whether the final decision to testify was Akina's decision, knowingly, intelligently, and voluntarily made.

A defendant's right to testify is violated when the colloquy does not establish "an objective basis for finding that

18

[the defendant] knowingly, intelligently, and voluntarily gave up" their right to testify.  <u>Han</u>, 130 Hawaiʻi at 91, 306 P.3d at 136.  As discussed at length in <u>Torres</u>, the right not to testify is equally protected, and thus, a defendant's right not to testify is violated when the colloquy does not establish an objective basis for finding that the defendant knowingly, intelligently, and voluntarily gave up their right not to testify.  Akina specifically argues that the court failed to advise her that "no one could force her to testify if she did not want to."  While that advisement might have been helpful here to establish a knowing, intelligent, and voluntary waiver of Akina's right not to testify, it has not been specifically mandated in <u>Torres</u> or the cases following <u>Torres</u>.  Nevertheless, on this record, based on the totality of the facts and circumstances, we cannot conclude that Akina's waiver of her right not to testify was knowingly, intelligently, and voluntarily made.

For the reasons discussed above, the Judgment is vacated and we remand this case for a new trial.

DATED: Honolulu, Hawaiʻi, July 29, 2022.

On the briefs:

Shay F. Shibata,
Deputy Public Defender,
for Defendant-Appellant.

Stephen L. Frye,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Defendant-Appellant.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge